254 P.3d 862 (2011)
161 Wash.App. 204
CLARK COUNTY WASHINGTON, City of LA Center, GM Camas LLC, MacDonald Living Trust, and Renaissance Homes, Respondents,
v.
WESTERN WASHINGTON GROWTH MANAGEMENT HEARINGS REVIEW BOARD, John Karpinski, Clark County Natural Resources Council, and Futurewise, Appellants.
No. 39546-1-II.
Court of Appeals of Washington, Division 2.
April 13, 2011.
*865 Tim Trohimovich, Futurewise, Seattle, WA, Robert A. Beattey, Spencer Law Firm, LLC, Tacoma, WA, for Appellants.
Christine M. Cook, Clark Co. Prosc. Attny. Office, Vancouver, WA, for Respondents.
Meridee E. Pabst, Attorney at Law, Washougal, WA, Randall Bryan Printz, The Landerholm Firm, Michael C. Simon, Brian K. Gerst, Landerholm, Memovich, Lansverk & Whitesi, James Denver Howsley, Miller Nash LLP, Vancouver, WA, Daniel H. Kearns, Reeve Kearns PC, Portland, OR, Marc Worthy, Office of the Attorney General, Seattle, WA, for Respondent Intervenors.
Christopher R. Sundstrom, Spencer Sundstrom PLLC, Vancouver, WA, Roger Dyer Knapp, Attorney at Law, Camas, WA, for other interested parties.
QUINN-BRINTNALL, J.
¶ 1 In 2004, Clark County (County) designated the 19 land parcels at issue in this case as agricultural lands of long-term commercial significance (ALLTCS).[1] Despite identifying these parcels as having long-term commercial significance for the agricultural industry in the County, less than three years later, in 2007, the County removed the 19 parcels from ALLTCS status. Simultaneously with the dedesignation, the County included the 19 parcels in its then existing urban growth areas (UGAs). Although the ALLTCS designation process and the redrawing of the UGA boundaries are separate processes,[2] the County blended the processes to dedesignate and incorporate the parcels into UGAs in a single proceeding.
¶ 2 John Karpinski, a private citizen and land owner in Clark County; the Clark County Natural Resources Council, a Washington nonprofit corporation; and Futurewise, a Washington nonprofit corporation (hereinafter collectively referred to as Karpinski), petitioned the Western Washington Growth Management Hearings Board (Growth Board)[3] for review of the County's 2007 dedesignation/UGA expansion decisions. Karpinski challenged the County's decisions on the grounds that (1) the parcels still qualified as ALLTCS, (2) the County improperly considered economic factors in deciding to dedesignate the agricultural parcels, and (3) the County improperly included lands not characterized by urban growth in its UGAs. While review of the County's dedesignations/UGA expansions was pending before the Growth Board, the cities of Camas and Ridgefield passed ordinances to annex all of the dedesignated land in parcel CB and part of the dedesignated land in parcels CA-1 and RB-2.
*866 ¶ 3 The Growth Board affirmed the County's decisions with regards to eight of the challenged parcels: BB, LA, LC, RB-1, RC, VC, VE, and WA. But the Growth Board found that the County committed clear error in its decisions regarding the other 11 challenged parcels: BC, CA-1, CB, LB-1, LB-2, LE, RB-2, VA, VA-2, VB, and WB. As to these 11 areas, the Growth Board deemed the areas noncompliant with the GMA and the County's actions invalid.
¶ 4 The County appealed the Growth Board's decision to the Clark County Superior Court, assigning error only to the rulings on the 11 parcels that the Growth Board found noncompliant under the GMA; Karpinski did not cross-appeal.[4] In reviewing the Growth Board's rulings, the superior court affirmed in part, reversed in part, held some issues moot, and remanded to the Growth Board for further consideration.
¶ 5 Karpinski sought appellate review of the superior court's decision. Although Karpinski invoked our jurisdiction, because we review the Growth Board's decision, not the superior court decision affirming or reversing it, the burden to prove the propriety of the dedesignations is on the County. Lewis County v. W. Wash. Growth Mgmt. Hearings Bd., 157 Wash.2d 488, 497-98, 139 P.3d 1096 (2006); King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 553, 14 P.3d 133 (2000) (hereinafter referred to as Soccer Fields).[5] "`We apply the standards of [the Administrative Procedures Act (APA), ch. 34.05 RCW,] directly to the record before the agency, sitting in the same position as the superior court.'" Soccer Fields, 142 Wash.2d at 553, 14 P.3d 133 (quoting City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 45, 959 P.2d 1091 (1998)). Under the APA, we grant relief from an agency's adjudicative order only if it fails to meet one of nine standards delineated in RCW 34.05.570(3). "The burden of demonstrating the invalidity of [an] agency action[, here the Growth Board's decision,] is on the party asserting the invalidity" of the action, here the County. RCW 34.05.570(1)(a).
¶ 6 During our preliminary review of this case, we posed several questions to all the parties relating to jurisdiction and seeking a clarification of the issues on appeal. In particular, we requested citation to authority for Camas's and Ridgefield's annexation of lands while the status of these lands (dedesignation and inclusion into their UGAs) was pending review. We also requested citation to the County's and Growth Board's authority to act on issues pending review before this court that would invariably alter the status quo and impact our analysis.
¶ 7 To review the issues that the parties have raised in this case, we must address the timing and effective date of UGA boundary amendments, the effect of County and Growth Board actions on issues pending review before this court, and the proper standard for dedesignating ALLTCS. In part one of this opinion, we address the jurisdictional questions and hold that the Growth Board had authority to enter findings for parcels CA-1, CB, and RB-2.[6] In addition, we hold that the County had the authority to take legislative action and that the Growth Board had the authority to take agency action on issues pending before this court, but that these actions mooted issues related to parcels BC, CA-1, RB-2, and VB.
¶ 8 In the second part of this opinion, we evaluate whether the Growth Board committed a legal error and whether substantial evidence supports the Growth Board's order with regard to six specific land areas: LB-1, LB-2, LE, VA, VA-2, and WB. We reject the County's argument that the Growth Board is *867 required to review the challenged planning decisions based only on portions of the record selected by the County and is precluded from reviewing the entire record. We affirm the Growth Board's decisions with regards to parcels LB-1, LB-2, and LE. But because the Growth Board committed an error of law with regards to parcels VA, VA-2, and WB, we remand to the Growth Board for further consideration of these parcels.

FACTS
¶ 9 In 2004, the County updated its GMA comprehensive plan.[7] The next year, in 2005, the County began a review of its comprehensive plan culminating in the September 25, 2007 passage of Ordinance No. 2007-09-13 (Ordinance). The Ordinance made many revisions to the County's comprehensive plan. Central to this appeal is the County's dedesignation of parcels of land from ALLTCS status and the simultaneous decision to add these lands to the UGA boundaries of the County's cities. The County dedesignated 19 land parcels, consisting of approximately 4,351 acres of land, and incorporated them into the UGAs of the Cities of Battle Ground, Camas, La Center, Ridgefield, Vancouver, and Washougal.
¶ 10 On November 16, 2007, Karpinski petitioned the Growth Board, challenging the County's dedesignation of the 19 parcels and their addition into the various UGAs.[8] In general, Karpinski argued that the County erred in its decisions because (1) the parcels still qualified as ALLTCS under the test established in Lewis County, (2) the County violated, the GMA by improperly considering economic factors when it decided to dedesignate the parcels, and (3) the County improperly included lands not characterized by urban growth into its UGAs.
¶ 11 On April 8, 2008, the Growth Board held a one-day hearing to consider Karpinski's claims.[9] Although the Growth Board heard hours of testimony and reviewed an administrative record consisting of more than 3,000 pages, it focused its analysis on one specific County staff-produced document titled "Issue Paper # 7  Agricultural Lands." Administrative Record (AR) at 2236. This document contains the County's analysis of the statutory and regulatory factors for determining whether land qualifies as ALLTCS, a matrix containing information applying each of the factors to each of the 19 parcels, and maps highlighting the then current land use zoning designations of the 19 parcels.[10]
¶ 12 In late April 2008, while the Growth Board deliberated and prepared its final order on the propriety of the County's dedesignation/UGA expansion decisions for the 19 parcels, Camas and Ridgefield passed ordinances purporting to annex parts of some of the parcels then pending review before the Growth Board. By City Ordinance No. 991, Ridgefield purported to annex part of parcel RB-2. By City Ordinance No. 2512, Camas purported to annex part of parcel CA-1. And by City Ordinance No. 2511, Camas purported *868 to annex all of parcel CB. These annexed lands were included in Karpinski's petition for review to the Growth Board but the Growth Board had no notice of the cities' legislative annexation actions.
¶ 13 The Growth Board entered its final order on May 14, 2008, and an amended final order on June 3, 2008.[11] The Growth Board's order affirmed the County's decisions on 8 of the challenged parcels, but it found clear error in its decisions on the other 11 challenged parcels. Accordingly, the Growth Board found the County's actions noncompliant with the GMA and invalidated the Ordinance with regard to the following 11 parcels: Battle Ground parcel BC; Camas parcels CA-1 and CB; La Center parcels LB-1, LB-2, and LE; Ridgefield parcel RB-2; Vancouver parcels VA, VA-2, and VB; and Washougal parcel WB.
¶ 14 On June 11, 2008, the County petitioned the Clark County Superior Court, under the APA, to review the Growth Board's decision. The County challenged only the Growth Board's 11 findings of noncompliance related to the County's dedesignation decisions.[12] Karpinski did not file a cross appeal.
¶ 15 On February 26, 2009, Karpinski and GM Camas LLC, which has interests only in parcel CA-1, stipulated that because of Camas's enactment of City Ordinance No. 2512, purporting to annex part of parcel CA-1, that GM Camas LLC prevailed on this part of Karpinski's appeal. The superior court entered the stipulation and reversed the Growth Board's decision of noncompliance for parcel CA-1.[13]
¶ 16 On June 12, 2009, the superior court (1) reversed the Growth Board's decision that the County improperly dedesignated from ALLTCS status parcels CB, LB-1, LB-2, LE, VA, VA-2, and WB; (2) affirmed the Growth Board's decision that the County improperly dedesignated from ALLTCS status parcels BC and VB; (3) acknowledged its previous reversal of the Growth Board's decisions with regard to parcel CA-1 based on the parties' prior stipulation; (4) found issues related to parcel RB-2 moot; and (5) remanded the case to the Growth Board for further consideration. Karpinski timely appealed. The County filed a cross appeal that it later abandoned.
¶ 17 After the parties appealed to this court, the Growth Board and the County continued to pass ordinances and enter orders related to lands whose legal status was pending review before this court. These legislative and agency actions concerned land within parcels that were purportedly annexed (i.e., parcels CA-1, CB, and RB-2) and parcels where the superior court had affirmed the Growth Board's findings (i.e., parcels BC and VB). First, the Growth Board issued an order stating that it lacked jurisdiction over the purportedly annexed parts of parcels CA-1, CB, and RB-2, mistakenly believing that it lost jurisdiction when these lands were annexed prior to its final decision. The Growth Board refused to rescind its noncompliance findings for the purportedly annexed lands in these three parcels, but it "excused [the County] under these unique circumstances from taking legislative action to achieve compliance with the GMA" because the County now lacked authority over the purportedly annexed lands. AR at 3294. Next, the County passed an ordinance redesignating parcels BC, VB, and the portions of parcels CA-1 and RB-2 that were not purportedly annexed, as ALLTCS. Last, after *869 the redesignation of these lands, the Growth Board entered findings of GMA compliance for parcels BC, VB, and the unannexed portions of parcels CA-1 and RB-2.

ANALYSIS

I.
¶ 18 Initially, we address two threshold matters relating to jurisdiction that affect the scope of our review. First, we must answer this questionwhen is a county's planning decision that is appealed to the Growth Board final such that city governments can rely and take action on it? Specifically, in this case, when, if ever, did parcels CA-1, CB, and RB-2 become incorporated into the Camas and Ridgefield UGAs such that they were subject to annexation? Second, we must evaluate what effect a county's legislative action changing the designation of land has on our jurisdiction to resolve issues in a pending appeal involving that land. We hold that because a County's challenged land designation determination is not final, city governments cannot rely on county planning decisions that are the subject of a pending appeal and any such actions do not divest the reviewing body of jurisdiction. We also hold that in some circumstances, a County's legislative actions during a pending appeal may moot issues on review.

CITY GOVERNMENTS MAY NOT RELY ON COUNTY GMA PLANNING DECISIONS THAT ARE PENDING REVIEW
¶ 19 On June 1, 2010, we requested citation to the authority for Camas's and Ridgefield's annexation ordinances regarding parcel CB and parts of parcels CA-1 and RB-2. Under RCW 35.13.005, "[n]o city or town located in a county in which urban growth areas have been designated under RCW 36.70A.110 may annex territory beyond an urban growth area." Because the propriety of the County's decision to include this land in a UGA had been timely challenged and was pending review before this court, we questioned what authority allowed the cities to purportedly annex land not yet determined to be properly within their UGAs.
¶ 20 In a consolidated response, the parties first objected, arguing that the validity of the annexations is not properly before this court because no party raised it. But issues related to the annexations directly impact our ability to resolve pending issues on parcels CA-1, CB, and RB-2 raised in this appeal. And jurisdictional questions are, as always, a threshold issue for a reviewing court.
¶ 21 Because we sit in the same position as the superior court, we review issues related to all the challenged portions of the Growth Board's decision appealed to the superior court. See Soccer Fields, 142 Wash.2d at 553, 14 P.3d 133. Here, the County's original appeal challenged each of the Growth Board's decisions related to 11 different parcels, including challenges to parcels CA-1, CB, and RB-2. But in its opening brief to this court, the County argues that issues related to parcels CA-1, CB, and RB-2 are moot because the cities' annexation of the lands deprived the Growth Board and reviewing courts of jurisdiction. Moreover, the County argues on appeal that the Growth Board committed an error of law because it entered decisions evaluating the County's actions with regard to these lands without jurisdiction to do so.[14]
*870 ¶ 22 From these arguments, the question pending before us with regard to parcels CA-1, CB, and RB-2 is whether the Growth Board had jurisdiction to enter findings and conclusions on these three parcels. Implicit is a question of the legitimacy of the annexations, as evidenced by arguments that any determinations made by the Growth Board or this court would be pointless because the County has no authority over annexed lands. To evaluate whether any issue on these three parcels is moot or whether the Growth Board committed an error of law, as the County contends, we must first determine what effect, if any, the annexations had on the Growth Board's jurisdiction to determine GMA compliance for parcels CA-1, CB, and RB-2.
¶ 23 When addressing the merits of our jurisdictional questions, the parties argue in their consolidated response that statutory authority allows city and county governments to take action on issues that are under review by the Growth Board. Specifically, the parties cite RCW 36.70A.300(4), .320(1), and former RCW 36.70A.302(2) (1997) for support. RCW 36.70A.320(1) states that "comprehensive plans and development regulations, and amendments thereto, adopted under this chapter are presumed valid upon adoption." RCW 36.70A.300(4) states that, "[u]nless the [Growth B]oard makes a determination of invalidity ..., a finding of noncompliance and an order of remand shall not affect the validity of comprehensive plans and development regulations during the period of remand." The parties also cite to statutory language that a Growth Board "determination of invalidity is prospective in effect and does not extinguish rights that vested under state or local law before receipt of the [Growth B]oard's order by the city or county." Former RCW 36.70A.302(2) (emphasis added). The parties contend that these cited statutes allow cities to take legislative actions, including annexing land, in reliance on a county's decisions until the Growth Board determines that the county's planning decisions are non-compliant or invalid under the GMA.
¶ 24 The parties' arguments are unpersuasive. For the reasons we explain below, challenged County legislative actions pending review are not final and no party may act in reliance on them. In this case, the city of ordinances purporting to annex land in parcels CA-1, CB, and RB-2 did not deprive the Growth Board of jurisdiction over the challenge to the County's actions. Accordingly, here the Growth Board did not err by entering findings and conclusions related to parcels CA-1, CB, and RB-2 in its final order after Camas and Ridgefield purported to annex parts of these parcels.
¶ 25 We review statutory construction de novo. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 175, 4 P.3d 123 (2000). When the plain language of a statute is unambiguous, we construe the provision as written. Bravo v. Dolsen Cos., 125 Wash.2d 745, 752, 888 P.2d 147 (1995). But, in undertaking a plain language analysis, we avoid a reading that results in "unlikely, absurd, or strained consequences" because we presume that the legislature did not intend an absurd result. Cannon v. Dep't of Licensing, 147 Wash.2d 41, 57, 50 P.3d 627 (2002). We evaluate the plain meaning of a statutory provision from the ordinary meaning of the language used in the statute, as well as from the context of the statute in which that provision is found and the statutory scheme as a whole. Wash. Pub. Ports Ass'n v. Dep't of Revenue, 148 Wash.2d 637, 645, 62 P.3d 462 (2003).
¶ 26 The parties misinterpret RCW 36.70A.320(1). This statute addresses the burdens, presumptions, and standards that govern the review of a county action by the Growth Board. The purpose of the Growth Board's review is to determine the legitimacy of a county's actions that have been timely challenged. Although RCW 36.70A.320(1) creates a presumption of validity of the county's actions that must be applied by the Growth Board during its review, the statute does not create a presumption of validity such that other entities can act in reliance on challenged land use decisions before the Growth Board and/or appellate court terminates its review. A presumption of validity on review is just thata rebuttable presumption *871 that the County's decision is correct; but the County's timely challenged actions are not effective until review of the relevant issues is terminated.
¶ 27 The parties' reliance on RCW 36.70A.300(4) is also misplaced. This subsection of the statute addresses only the effect of Growth Board decisions "during the period of remand." RCW 36.70A.300(4) (emphasis added). During the Growth Board's initial review of the County's decisions, nothing has been remanded to the County for its further consideration. Accordingly, this statute does not apply.
¶ 28 Likewise, former RCW 36.70A.302(2) does not support the parties' argument. This statute states that Growth Board decisions are prospective in effect and do not "extinguish rights that vested under state or local law before receipt of the [Growth B]oard's order by the city or county." Former RCW 36.70A.302(2) (emphasis added). Here, the cities' rights to annex the lands purportedly added to their UGAs had not yet vested under state law. County decisions related to the GMA that are timely challenged and pending review before the Growth Board and/or an appellate court are not final and cannot be relied on until either (1) the Growth Board's final order is not appealed or (2) the county's decisions are affirmed and a final order or mandated opinion is filed by a court sitting in its appellate capacity.
¶ 29 Under the parties' interpretation of RCW 36.70A.300(4), .320(1), and former RCW 36.70A.302(2), the GMA would be unenforceable. The parties' interpretation would allow a county to incorporate any land into a UGA regardless of whether it satisfies the GMA's requirements; draw out the appeal at the Growth Board level until a city could pass an ordinance annexing the property; and then moot out any challenges by citing the county's lack of authority over the lands or argue, as it did here, that the annexation deprived the Growth Board of jurisdiction to review its decision to include the property in the UGA. The legislature did not intend to permit counties to evade review of their GMA planning decisions in his manner, and the GMA's statutory scheme does not allow them to do so.
¶ 30 Accordingly, we hold that Camas's and Ridgefield's annexations did not deprive the Growth Board of jurisdiction to review the validity of the County's actions dedesignating parcels CA-1, CB, and RB-2 and including them in the cities' UGAs. We address this issue only in relation to the County's challenge to the Growth Board's jurisdiction, and ours, to review its dedesignation/UGA decisions. We hold only that the Camas and Ridgefield annexation ordinances did not deprive the Growth Board or this court of jurisdiction over the appeal of parcels CA-1, CB, and RB-2 in this case. We reject the County's argument that the Growth Board lacked authority to enter noncompliance findings related to parcels CA-1, CB, and RB-2 and that it committed an error of law when entering its findings on these parcels. Accordingly, we hold that the Growth Board had authority to enter findings regarding these parcels.[15]
¶ 31 Finally, in its amicus curiae brief, Camas argues that it is a necessary party to the consideration of any questions involving the validity of the annexations and that it was never properly joined to these proceedings. CR 19. A necessary party is one that "claims an interest relating to the subject of the action" and whose absence from the case may "impair or impede his ability to protect that interest." CR 19(a)(2). We are not insensitive to the cities' concerns and limit our holding only to the Growth Board's authority to enter findings regarding the validity of the County's decisions relating to these parcels.

THE IMPACT OF COUNTY ACTIONS ON ISSUES PENDING REVIEW
¶ 32 Also on June 1, 2010, we asked the parties to address whether the County could enact ordinances and whether the Growth *872 Board could enter orders on matters pending appeal in this court. According to the parties' consolidated response, the County apparently decided to accept the superior court's decision affirming the Growth Board's decisions with regard to parcels BC and VB. While this case was pending review before this court, the County passed an ordinance removing parcels BC and VB from UGAs and redesignating them as ALLTCS. In the same ordinance, the County also removed from UGAs those parts of parcels CA-1 and RB-2 that were not included in the cities' annexation ordinances and redesignated them as ALLTCS.
¶ 33 Although a superior court lacks authority to enter an order that modifies the judgment or decision appealed without permission from this court, RAP 7.2(e),[16] this limitation does not appear to extend to or prohibit a legislative body from taking a valid legislative action. Here, the County withdrew its prior efforts to incorporate parcels BC, VB, and parts of CA-1 and RB-2 into UGAs and returned these lands to their original ALLTCS designation status. Although the County's original dedesignation decisions regarding these lands were subject to our review via Karpinski's appeal from the superior court's decision, the County has the burden to prove that the Growth Board erred under the APA. RCW 34.05.570(1)(a). By the nature of its legislative action, the County effectively conceded that the Growth Board did not err in its decisions related to these lands. And because the Growth Board subsequently removed its noncompliance findings with regard to these lands, there is no longer any error presented for our review or any remedy for us to provide.[17] Accordingly, any issues related to parcels BC, VB, and the parts of parcels CA-1 and RB-2 that were redesignated ALLTCS are now moot.

PROPRIETY OF APPELLATE REVIEW OF THE COUNTY'S GMA DECISIONS AFFIRMED BY THE GROWTH BOARD BUT NOT APPEALED
¶ 34 In our June 1, 2010 order relating to jurisdiction, we also asked the parties to clarify whether the notice of appeal included the propriety of the Growth Board's decision approving the County's dedesignation of eight parcels (i.e., parcels BB, LA, LC, RB-1, RC, VC, VE, and WA) from ALLTCS status. The Growth Board ruled that the County's decisions on these eight parcels were compliant with the GMA and Karpinski did not cross-appeal these decisions to the superior court. Although the Growth Board addressed all 19 parcels in a single decision, the parties agree that the notice of appeal did not include any issues related to the Growth Board's decisions affirming the eight aforementioned parcels. Accordingly, we do not address any issues related to parcels BB, LA, LC, RB-1, RC, VC, VE, and WA.

II.
¶ 35 We next address the land specific arguments related to parcels LB-1, LB-2, LE, VA, VA-2, and WB. The Growth Board determined that the County's decisions dedesignating *873 these parcels from ALLTCS status and incorporating them into UGAs were noncompliant with the GMA. We affirm the Growth Board's decisions for parcels LB-1, LB-2, and LE, but remand to the Growth Board for further consideration on parcels VA, VA-2, and WB.

STANDARD OF REVIEW AND BURDEN OF PROOF IN GMA CASES
¶ 36 The GMA provides counties with broad discretion to develop comprehensive plans. Soccer Fields, 142 Wash.2d at 561, 14 P.3d 133. A county's discretion, however, "is bounded ... by the goals and requirements of the GMA." Soccer Fields, 142 Wash.2d at 561, 14 P.3d 133. The GMA's goals include encouraging development in areas already characterized by urban development; reducing sprawl; encouraging economic development; maintaining and enhancing natural resource-based industries, such as the agricultural industry; conserving agricultural lands; and retaining open spaces including increasing access to natural resource lands. RCW 36.70A.020(1), (2), (5), (8), (9).
¶ 37 The Growth Board is charged with determining whether county decisions comply with GMA requirements. Former RCW 36.70A.280 (2003); RCW 36.70A.320(3); Lewis County, 157 Wash.2d at 497, 139 P.3d 1096. In carrying out its duties, the Growth Board can either (1) remand noncompliant decisions and ordinances to the county so it can bring them into compliance with the GMA or (2) invalidate part or all of the county's noncompliant comprehensive plan and/or development regulations. RCW 36.70A.300(3); former RCW 36.70A.302(1) (1997); Lewis County, 157 Wash.2d at 498 n. 7, 139 P.3d 1096.
¶ 38 The legislature specifically intended the Growth Board "`to grant deference to counties and cities in how they plan for growth, consistent with the requirements and goals of' the GMA." Lewis County, 157 Wash.2d at 498, 139 P.3d 1096 (quoting former RCW 36.70A.3201 (1997)). According, at the Growth Board's level of review, a county's comprehensive plan and/or regulations are "presumed valid upon adoption." RCW 36.70A.320(1). This statutory deference requires that the Growth Board "`shall find compliance' unless it determines that a county action `is clearly erroneous in view of the entire record before the [Growth B]oard and in light of the [GMA's] goals and requirements.'" Lewis County, 157 Wash.2d at 497, 139 P.3d 1096 (quoting RCW 36.70A.320(3)); see also RCW 36.70A.320(2) (stating that a challenger has the burden to demonstrate that a county's action is not GMA-compliant). A county's action is "clearly erroneous" if the Growth Board has a "firm and definite conviction that a mistake has been committed." Thurston County v. W. Wash. Growth Mgmt. Hearings Bd., 164 Wash.2d 329, 340-41, 190 P.3d 38 (2008) (internal quotation marks omitted) (quoting Lewis County, 157 Wash.2d at 497, 139 P.3d 1096).
¶ 39 The APA governs judicial review of board actions, including the Growth Boards'. Thurston County, 164 Wash.2d at 341, 190 P.3d 38; see also RCW 36.70A.300(5). "The burden of demonstrating the invalidity of [an] agency action is on the party asserting invalidity," here the County and the other interveners. RCW 34.05.570(1)(a) (emphasis added); Thurston County, 164 Wash.2d at 341, 190 P.3d 38. On appeal, we sit in the same position as the superior court and apply the APA review standards directly to the record before the agency. Soccer Fields, 142 Wash.2d at 553, 14 P.3d 133 (quoting Redmond, 136 Wash.2d at 45, 959 P.2d 1091). In addition, like the Growth Board, we defer to the county's planning action unless the action is "clearly erroneous." Brinnon Grp. v. Jefferson County, 159 Wash.App. 446, 465, 245 P.3d 789 (2011); see RCW 36.70A.320(3); former RCW 36.70A.3201; Quadrant Corp. v. Cent. Growth Mgmt. Hearings Bd., 154 Wash.2d 224, 238, 110 P.3d 1132 (2005).
¶ 40 Under the APA, we grant relief from an agency's order after an adjudicative proceeding if we determine, in relevant part, that
(d) [t]he agency has erroneously interpreted or applied the law; [or]
(e) The order is not supported by evidence that is substantial when viewed in *874 light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter.
RCW 34.05.570(3).[18]
¶ 41 We review a Growth Board's "legal conclusions de novo, giving substantial weight to its interpretation of the statutes it administers" and its "findings of facts for substantial evidence." Manke Lumber Co. v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 113 Wash.App. 615, 622, 53 P.3d 1011 (2002), review denied, 148 Wash.2d 1017, 64 P.3d 649 (2003); see also Swinomish Indian Tribal Cmty. v. W. Wash. Growth Mgmt. Hearings Bd., 161 Wash.2d 415, 424, 166 P.3d 1198 (2007); Lewis County, 157 Wash.2d at 498, 139 P.3d 1096. Substantial evidence is "`a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" Soccer Fields, 142 Wash.2d at 553, 14 P.3d 133 (quoting Callecod v. Wash. State Patrol, 84 Wash.App. 663, 673, 929 P.2d 510, review denied, 132 Wash.2d 1004, 939 P.2d 215 (1997)).

THE GMA DEFINITION AND HISTORY OF THE TERM "AGRICULTURAL LANDS OF LONG-TERM COMMERCIAL SIGNIFICANCE" (ALLTCS)
¶ 42 By September 1, 1991, certain counties were required to designate "`[a]gricultural lands that are not already characterized by urban growth and that have long-term significance for the commercial production of food or other agricultural products.'" Lewis County, 157 Wash.2d at 498-99, 139 P.3d 1096 (quoting RCW 36.70A.170(1)(a)). Additionally, counties were mandated to develop regulations "`to assure the conservation of'" designated agricultural lands. Lewis County, 157 Wash.2d at 499, 139 P.3d 1096 (quoting RCW 36.70A.060(1)(a)). The purpose was clear: to curtail sprawl, to preserve critical resource lands, and to ensure the continued viability of local food production.
¶ 43 Our Supreme Court summarized the working definition of "agricultural land" under the GMA as
land: (a) not already characterized by urban growth (b) that is primarily devoted to the commercial production of agricultural products enumerated in RCW 36.70A.030(2), including land in areas used or capable of being used for production based on land characteristics, and (c) that has long-term commercial significance for agricultural production, as indicated by soil, growing capacity, productivity, and whether it is near population areas or vulnerable to more intense uses. We further hold that counties may consider the development-related factors enumerated in [former] WAC 365-190-050(1) [(1991)] in determining which lands have long-term commercial significance.
Lewis County, 157 Wash.2d at 502, 139 P.3d 1096.[19]
*875 ¶ 44 Despite our Supreme Court's permissive language suggesting that counties "may consider the development-related factors enumerated in [former] WAC 365-190-050(1)," Lewis County, 157 Wash.2d at 502, 139 P.3d 1096 (emphasis added), when addressing the third prong of the Lewis County test to determine if land has long-term significance for agricultural production, the regulation actually requires counties to consider the 10 factors:
(1) In classifying agricultural lands of long-term significance for the production of food or other agricultural products, counties and cities shall use the land-capability classification system of the United States Department of Agriculture [(USDA)] Soil Conservation Service as defined in Agriculture Handbook No. 210. These eight classes are incorporated by the [USDA] into map units described in published soil surveys. These categories incorporate consideration of the growing capacity, productivity and soil composition of the land. Counties and cities shall also consider the combined effects of proximity to population areas and the possibility of more intense uses of the land as indicated by:
(a) The availability of public facilities;
(b) Tax status;
(c) The availability of public services;
(d) Relationship or proximity to urban growth areas;
(e) Predominant parcel size;
(f) Land use settlement patterns and their compatibility with agricultural practices;
(g) Intensity of nearby land uses;
(h) History of land development permits issued nearby;
(i) Land values under alternative uses; and
(j) Proximity of markets.
Former WAC 365-190-050 (emphasis added).[20] The GMA and WAC do not prioritize these 10 factors and a county has discretion regarding their application. Lewis County, 157 Wash.2d at 502 n. 11, 139 P.3d 1096. Additionally, our Supreme Court has suggested that counties cannot consider additional other factors to the detriment of the GMA's stated goals and requirements. See Lewis County, 157 Wash.2d at 506 n. 16, 139 P.3d 1096 ("[A]lthough .... counties may consider factors besides those specifically enumerated in RCW 36.70A.030(10) in evaluating whether agricultural land has long-term commercial significance, that is not what happened here. Rather, Lewis County simply decided to serve its own goal ... instead of meeting the GMA's specific land designation requirements.").
¶ 45 The Growth Board previously gave deference to the County's 2004 designation of these lands as ALLTCS. See Bldg. Assoc. of Clark Cnty., No. 04-2-0038c, 2005 WL 3392958. We evaluate whether a dedesignation of agricultural land was clearly erroneous by determining whether the property in question continues to meet the GMA definition of "agricultural land" as defined in Lewis County.[21]See Yakima County v. E. Wash. Growth Mgmt. Hearings Bd., 146 Wash.App. 679, 688-89, 192 P.3d 12 (2008). *876 The County's contention that the Growth Board is required to give its 2007 dedesignation deference over its 2004 designation is unpersuasive. The County designated these parcels as ALLTCS in its 2004 comprehensive plan that it intended to follow for 20 years. Absent a showing that this designation was both erroneous in 2004 and improperly confirmed by the Growth Board, or that a substantial change in the land occurred since the ALLTCS designation, the prior designation should remain. Without such deference to the original designation, there is no land use plan, merely a series of quixotic regulations. Moreover, under such ever-changing regulations, the GMA goal of planning, maintaining, and conserving agricultural lands could never be achieved. See RCW 36.70A.020(8); Soccer Fields, 142 Wash.2d at 558, 14 P.3d 133.

THE GROWTH BOARD'S REQUIRED DEFERENCE TO THE COUNTY
¶ 46 As another preliminary matter, the County argues that the Growth Board committed an error of law by failing to defer to the County's current land characterizations to the derogation of its prior long-term land designations. Specifically, the County asserts that the Growth Board substituted its own judgment based on its improper independent evaluation of the evidence rather than deferring to the County's decisions, as required by RCW 36.70A.320(1) and former RCW 36.70A.3201. The County contends that the Growth Board exceeded its authority by reevaluating all the evidence in the record to determine whether the County committed a clear error. We disagree.
¶ 47 The Growth Board's function is to determine whether the County complied with the GMA. Former RCW 36.70A.280; RCW 36.70A.320(3); Lewis County, 157 Wash.2d at 497, 139 P.3d 1096. In order to determine compliance, the Growth Board must review the County's actions and decide whether they are "clearly erroneous in view of the entire record before the board and in light of the goals and requirements" of the GMA. RCW 36.70A.320(3) (emphasis added). The County has not persuaded us that the Growth Board committed an error of law by exceeding its authority in its review of the County's dedesignation decisions. RCW 34.05.570(1)(a).
¶ 48 In order for the Growth Board to review Karpinski's challenge to the County's dedesignation decisions, it had to review all of the evidence in the record, review the statutory and regulatory factors in the Lewis County test, and determine whether the County erred in 2007 when applying the test to the parcels. To fulfill its statutory obligation of determining whether a county committed clear error, a Growth Board must review the evidence but not reweigh it. Once the Growth Board determines that the County committed a clear error, it owes no deference to the County's decisions, which rests on the identified error, and acts in accord with its statutory duty when entering findings of noncompliance and/or invalidity. RCW 36.70A.300, .302, .320(3). Accordingly, insofar as the County argues that the Growth Board committed a legal error by reviewing all the evidence rather than just the portion of the record that the County put forth as supporting its decisions, the County's claim fails.
¶ 49 Moreover, the County's argument that the Growth Board is compelled to consider only the portion of the evidentiary record highlighted by the County and is precluded from considering the entire evidentiary record is inconsistent with the concept of appellate review. If the Growth Board were required to automatically accept a county's land characterization without the context of the entire record, there is, in effect, no full review of the county's decisions. When engaging in a statutory construction analysis, we avoid a construction that results in "unlikely, absurd, or strained consequences" because we presume that the legislative body did not intend absurd results. Cannon, 147 Wash.2d at 57, 50 P.3d 627. Under the County's argument, the Growth Board can consider only a county's final decisions and/or evidence that a county puts forward as supporting its decision, and the Growth Board must reject any contradictory evidence and/or not examine the reasons underlying a county's decisions. But the Growth Board has both the duty and the authority to review a county's reasons supporting its decisions to determine *877 if whether a county followed the GMA and whether a county's decisions are consistent with the GMA's goals and objectives. See RCW 36.70A.320(3). Otherwise a county could simply ignore overwhelming evidence that contradicts its preferred planning option and articulate a decision that, on its face, appears consistent with the GMA but lacks evidentiary support.
¶ 50 In addition, the County's argument would render meaningless the plain language of the Growth Board's mandate to determine GMA compliance "in view of the entire record before the board." RCW 36.70A.320(3) (emphasis added). We interpret and construe statutes so as to give effect to all statutory language and not render any part meaningless or superfluous. Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996). Under the County's interpretation, a county would have unfettered discretion and authority to make planning decisions that facially comply with the GMA but are based on policies inconsistent with the GMA. The County's interpretation is inconsistent with a proper application of the rules of statutory construction and would effectively eviscerate the duties the legislature requires the Growth Board to perform.
¶ 51 In addition, the County's argument misstates the Growth Board's standard of review by conflating it with the appellate court's standard of review. The County asserts that if substantial evidence supports its decisions, the Growth Board must find that the County complied with the GMA. Resp't MacDonald Living Trust Br. at 7 (stating, "[T]he Growth Board was required to find the County's action in compliance unless the Growth Board found substantial evidence in the record that the County's action was clearly erroneous in view of the entire record.") (emphasis added). But a Board's finding of clear error is not grounded in whether substantial evidence supports the County's decisions; the correct standard is whether, after having reviewed the entire record in light of the goals and purposes of the GMA, the Growth Board has a "`firm and definite conviction that a mistake has been committed.'" Soccer Fields, 142 Wash.2d at 552, 14 P.3d 133 (quoting Dep't of Ecology v. Pub. Util. Dist. No. 1, 121 Wash.2d 179, 201, 849 P.2d 646 (1993), aff'd, 511 U.S. 700, 114 S.Ct. 1900, 128 L.Ed.2d 716 (1994)). The Growth Board could find both that substantial evidence supports the County's decisions and that the County's decisions contradict the goals and purposes of the GMA such that the Growth Board has a firm and definite conviction that the County made a mistake.
¶ 52 Accordingly, the County's claim that the Growth Board committed an error of law when it did not defer to the County's 2007 decisionswhich were inconsistent with the County's 2004 decisions to which the Growth Board had previously deferredrests on a misinterpretation of statutes. The GMA does not preclude the Growth Board from reviewing the entire record when making a determination of GMA compliance. And the correct standard for the Growth Board to apply is whether it has a firm and definite conviction that the County made a mistake. We turn now to a review of the individual parcels and whether the Growth Board committed an error of law when finding the County made clear errors in its planning decisions.

LA CENTER PARCELS LB-1, LB-2, LE[22]
¶ 53 Next, we address the County's argument that the Growth Board erred in finding that parcels LB-1, LB-2, and LE did not comply with the GMA because the Growth Board (1) failed to consider evidence supporting La Center's position and (2) failed to enter findings of fact that showed it considered fully all the Lewis County factors. Our review of the record shows that the Growth Board considered all the Lewis County factors and correctly determined that the County committed a clear error in deciding to dedesignate these lands. The County ignored overwhelming evidence showing that these parcels were ALLTCS in 2004 and remained so in 2007. Substantial evidence *878 supports each part of the Growth Board's application of the Lewis County analysis, as well as the ultimate GMA noncompliance finding. The Growth Board properly determined that the County erred in 2007 when it dedesignated parcels LB-1, LB-2, and LE from ALLTCS status and incorporated them into the La Center UGA.
¶ 54 First, we reiterate that the County designated La Center parcels LB-1, LB-2, and LE as ALLTCS in 2004. The record supports the Growth Board's determination that ALLTCS remained the correct designation for the property in 2007. The challenged La Center parcels meet the definition of ALLTCS based on the County's own Lewis County matrix information. The evidence that the County considered in its matrix overwhelmingly indicates that these parcels remain ALLTCS and that, in dedesignating them, the County incorrectly ignored the vast majority of the evidence in favor of its desire to further economic development for the City of La Center.
¶ 55 Specifically, the matrix indicates that parcels LB-1, LB-2, and LE all (1) lack water and sewer lines in their borders; (2) are not adjacent to the then existing boundary of the La Center UGA;[23] (3) are described as having mostly rural land uses such as open fields, forested land, and rural residential; (4) are next to land characterized by rural land uses; and (5) lack any urban development permits in their vicinity. In addition, parcel LB-1 is described as containing 56.58 percent prime agriculture soils with 83.79 percent of the parcel's land currently in an agricultural/farm use program. Parcels LB-2 and LE have 80 percent and 78.69 percent prime agricultural soils, respectively, although these parcels currently have only 12 percent and 0 percent of the land currently in an agricultural/farm use program. Based on the overwhelming evidence that these parcels are still ALLTCS, the Growth Board correctly identified that the County committed clear error when dedesignating parcels LB-1, LB-2, and LE from ALLTCS status.
¶ 56 Because the Lewis County test has three prongs that must be satisfied for land to be dedesignated as ALLTCS, we briefly evaluate each in reviewing whether the Growth Board correctly concluded that the County erred when it dedesignated these parcels. Yakima County, 146 Wash.App. at 688-89, 192 P.3d 12. Put differently, just because the County may have committed clear error in its application of one prong of the test does not mean that the County's overall dedesignation decision for a particular parcel was clear error because the County may have correctly determined that the land failed a different prong of the test.
¶ 57 The first Lewis County prong requires a determination of whether the land is characterized by "urban growth." 157 Wash.2d at 502, 139 P.3d 1096. The Growth Board's finding of fact 43 states in part, "Areas LB-1, LB-2, and LE while near the La Center's UGA are not areas of the UGA characterized by urban growth." 2 CP at 339. The County concedes that it has never challenged this finding of fact.[24] Unchallenged findings are verities on appeal. Manke, 113 Wash.App. at 628, 53 P.3d 1011.
¶ 58 Moreover, even if we were to review it, substantial evidence supports finding of fact 43. The GMA defines "urban growth" as "typically requir[ing] urban governmental services." Former RCW 36.70A.030(18) (2005). "Urban governmental services" include a variety of "public services and public facilities." Former RCW 36.70A.030(20) (2005) (listing examples of "urban governmental services," including storm and sanitary sewers, water, street cleaning, fire and police protection, public transit, and other public utilities). The GMA also defines "[c]haracterized by urban growth" as "land having urban growth located on it, or to land *879 located in relationship to an area with urban growth on it as to be appropriate for urban growth." Former RCW 36.70A.030(18).
¶ 59 All the evidence in the County's matrix belies a conclusion that parcels LB-1, LB-2, and LE are characterized by urban growth. The second column of the County's matrix, which addresses the first Lewis County test prong, notes only the size of the parcel and that there are no sewer or water lines in the parcels. And, elsewhere in the matrix, the County describes each of these parcels as containing mostly "open fields, forested land, and rural residential" land uses, that there are no urban development permits within the vicinity of these parcels, and that the parcels are not adjacent to any existing UGAs. AR at 2242-43. Accordingly, substantial evidence supports a finding that parcels LB-1, LB-2, and LE do not contain urban growth and are not near lands containing urban growth.[25] The Growth Board correctly concluded that the County committed clear error when assessing the urban growth characteristics of these parcels because the evidence does not support it.
¶ 60 The second Lewis County prong requires a determination of the commercial productivity of the land or the land's capability of being commercially productive. 157 Wash.2d at 502, 139 P.3d 1096. This factor requires an assessment of whether "the land is actually used or capable of being used for agricultural production." Redmond, 136 Wash.2d at 53, 959 P.2d 1091. Further, "neither current use nor landowner intent of a particular parcel is conclusive for purposes of this element." Redmond, 136 Wash.2d at 53, 959 P.2d 1091. The Growth Board's finding of fact 43 states in part, "All areas[, LB-1, LB-2, and LE,] are capable of being farmed." 2 CP at 339. The County did not challenge finding of fact 43 and, therefore, it is a verity on appeal. Manke, 113 Wash. App. at 628, 53 P.3d 1011. Moreover, on appeal, the County concedes that "there is substantial evidence in the record that these areas have soils suitable for agriculture." Resp't La Center Br. at 4. Accordingly, substantial evidence supports that parcels LB-1, LB-2, and LE are lands that are able to be farmed. The Growth Board correctly concluded that the County committed clear error when it evaluated the farming capabilities of these parcels.[26]
¶ 61 The final Lewis County prong requires a determination of the "long-term commercial significance" for agricultural production of the parcels. 157 Wash.2d at 502, 139 P.3d 1096. This prong requires considering soil composition, proximity to population areas, the possibility of more intense uses of the land, and the 10 factors in former WAC 365-190-050(1). See RCW 36.70A.030(2), (10); Lewis County, 157 Wash.2d at 502, 139 P.3d 1096. This is the main prong that the County challenges, alleging that the Growth Board did not adequately consider all the factors in light of minimal findings of fact entered related to this prong.
¶ 62 Although the County is correct that the Growth Board did not enter specific findings of fact related to each of the WAC factors, the record shows that the Growth Board adequately considered all aspects of the third Lewis County test prong. In its final decision, the Growth Board outlined the various arguments the parties presented regarding the WAC factors, evidencing that the Growth Board did not overlook disputes *880 about any of them. In the analysis section of its final order, the Growth Board mentioned "other WAC factors" but stated that "[t]he [County]'s reason for de-designating these areas is that they border [Interstate-5 (I-5)] therefore present[ing] a unique economic development opportunity for La Center.... The [County]'s desire to further economic development can not outweigh its duty to designate and conserve agricultural lands." 2 CP at 328. The County's clearly stated reasons for dedesignating these parcels were beliefs that (1) the parcels had a "special value" (AR at 24080) that provided more economic benefit to La Center as developed land than it would as agricultural land and (2) the lands would help "diversify the La Center economy." AR at 15.[27]
¶ 63 Although neither the GMA nor WAC prioritize the WAC factors, the Growth Board correctly determined that the County committed clear error because it focused almost exclusively on diversifying La Center's economy and other economic considerations while ignoring the other WAC factors and local agricultural needs. Our Supreme Court previously suggested that economic considerations cannot be outcome determinative because "[p]resumably, in the case of agricultural land, it will always be financially more lucrative to develop such land for uses more intense than agriculture." Redmond, 136 Wash.2d at 52, 959 P.2d 1091.
¶ 64 Moreover, the County's overtly heavy reliance on economic factors when deciding whether land has long-term agricultural commercial significance runs afoul of several of the GMA's planning goalsnamely, the County's duty to "designate and conserve agricultural lands." Soccer Fields, 142 Wash.2d at 558, 14 P.3d 133 (analyzing the GMA's "Natural resource industries" planning goalRCW 36.70A.020(8)). In addition, the County's emphasis on economic factors violates RCW 36.70A.020(5), which requires counties to "[e]ncourage economic development... within the capacities of the state's natural resources, public services, and public facilities." (Emphasis added.) The Growth Board correctly concluded that the County committed clear error in its analysis of the Lewis County test's third prong when the County appeared to overtly ignore the goals of the GMA by focusing on economic factors.
¶ 65 In addition, we note that the economic factors on which the County relied when making its decisions were speculative in nature. At the time, part of parcel LB-2 was subject to a pending request for federal trust holding status by the recently federally-recognized Cowlitz Indian Tribe. The County believed that the land would be taken into trust and that the tribe would then build a casino on the land, which in turn would destroy the agricultural nature of the surrounding land. The County believed that because the land would soon be developed by the tribe anyway, development should be allowed on other agricultural lands in and around parcel LB-2 and the I-5 area. At the time of the County's decision, the possible approval of the pending trust application and the possible building of a casino were too attenuated to support the County's position. Allowing the County to begin developing the land in 2007 based on the Cowlitz Tribe's speculative development plans, which could take years to overcome multiple legal hurdles, could have resulted in the inappropriate conversion of agricultural land pursuant to the GMA if the Cowlitz Tribe's speculative development plans fell through. Perhaps in the future, the circumstances of the land will have changed such that the land in and around parcel LB-2 no longer qualifies as ALLTCS under the Lewis County test. But when the County made its decision under the then existing circumstances as we understand them, and in light of the deference to the 2004 ALLTCS land designations, the parcels continued to meet the requirements of the Lewis County test.[28]
*881 ¶ 66 Moreover, to the extent that the County believes that the "only logical place" for economic growth of the city is an expansion of the UGA to the I-5 corridor, their belief lacks support in the law. AR at 2370. Under the GMA, the "logical place" for expansion and growth is to build higher within the UGA, not to expand it. See RCW 36.70A.020(2) (stating that a goal of the GMA is to "[r]educe the inappropriate conversion of undeveloped land into sprawling, low-density development") (emphasis omitted).
¶ 67 We also reject the County's position that the Growth Board erred by focusing on the La Center parcels' soil type and relationship to the existing La Center UGA. The Growth Board's decision cited a variety of reasons supporting its finding that the County committed clear error. Of particular noteworthiness, the Growth Board emphasized a lack of urban growth on the parcels themselves as well as the surrounding lands. Only part of the Growth Board's analysis included soil characteristics and proximity to the existing La Center UGA.
¶ 68 In addition, the case law the County relies on does not support its assertion that the Growth Board incorrectly determined that these parcels are not adjacent to areas characterized by urban growth. The County citing City of Arlington v. Central Puget Sound Growth Management Hearings Board, 164 Wash.2d 768, 193 P.3d 1077 (2008), argues that because the parcels are adjacent to the I-5 highway, they are adjacent to areas characterized by urban growth. But in Arlington, our Supreme Court held that an area called "Island Crossing" could be incorporated into a UGA for two separate reasons: (1) The land's proximity to an I-5 interchange allowed the land to be properly considered as proximate to urban growth, and (2) the Island Crossing land had an adjacent border to the existing Arlington UGA. 164 Wash.2d at 790-91, 193 P.3d 1077 (emphasis added). Here, the parcels have no adjacent borders with the former La Center UGA boundary and, although they are near I-5, the parcels themselves and surrounding lands completely lack any urban growth. The Arlington test is not satisfied by mere proximity to the I-5 corridor and does not support the County's claim.
¶ 69 Accordingly, having correctly concluded that the County committed clear error in its analysis of the Lewis County test, the Growth Board did not commit an error of law by failing to defer to the County's dedesignation decisions for parcels LB-1, LB-2, and LE. In addition, based on its review of the totality of all the evidence before it, substantial evidence supports the Growth Board's conclusion that parcels LB-1, LB-2, and LE meet all three prongs of the Lewis County test and are ALLTCS. We discern no error and affirm the Growth Board's decision that the evidence does not support the County's dedesignation of parcels LB-1, LB-2, and LE from their ALLTCS status.

VANCOUVER PARCELS VA AND VA-2[29]
¶ 70 The County argues that the Growth Board erred when entering finding of *882 fact 32, stating that parcels VA and VA-2 are "near the UGA but are not near areas characterized by urban growth or adjacent to areas characterized by urban growth." 2 CP at 337. In effect, the County argues that the Growth Board erred when reviewing the County's assessment of the first Lewis County prong. We agree and remand to the Growth Board for reconsideration of its decision on parcels VA and VA-2.
¶ 71 The GMA defines "[c]haracterized by urban growth" as referring to "land having urban growth located on it, or to land located in relationship to an area with urban growth on it as to be appropriate for urban growth." Former RCW 36.70A.030(18) (emphasis added). "Urban growth" is defined in part as "growth that makes intensive use of land for the location of buildings, structures, and impermeable surfaces to such a degree as to be incompatible with the primary use of land for the production of food, other agricultural products, or fiber" and that "[w]hen allowed to spread over wide areas, urban growth typically requires urban governmental services." Former RCW 36.70A.030(18). "Urban governmental services" are "public services and public facilities ... including storm and sanitary sewer systems, domestic water systems, street cleaning services, fire and police protection services, public transit services, and other public utilities associated with urban areas and normally not associated with rural areas." Former RCW 36.70A.030(20).
¶ 72 Under the first prong of the Lewis County test, the statutory definition of "urban growth" requires an assessment of the overall context of the land's relationship to the surrounding landnot just an evaluation of the land itself. See former RCW 36.70A.030(18); Lewis County, 157 Wash.2d at 502, 139 P.3d 1096. Parcels VA and VA-2 lie within a small area of land that is quickly being encroached on by two separate UGAsthe Vancouver UGA and the Battleground UGA. These parcels' relative proximity to all the development occurring in both UGAs, but particularly the Vancouver UGA, belies the Growth Board's conclusion that the VA and VA-2 parcels are not characterized by urban growth. It appears that the Growth Board's determination that the County committed clear error in the dedesignation of these parcels was based on an error in the Growth Board's application of the statutory definition of "characterized by urban growth" in the first Lewis County prong. Accordingly, we remand to the Growth Board its decisions regarding parcels VA and VA-2 for further consideration.[30]

WASHOUGAL PARCEL WB[31]
¶ 73 For parcel WB, the County argues that substantial evidence does not support part of finding of fact 40 and that the Growth Board failed to properly apply the Lewis County test by not considering all the WAC factors. Substantial evidence supports the challenged portion of finding of fact 40. But the record does not show that the Growth Board considered all of the WAC factors. Accordingly, we remand to the Growth Board its decision on parcel WB for further consideration.
¶ 74 The County assigns error to finding of fact 40 insomuch as the Growth Board stated, "[Area WB] ... is not adjacent to the UGA." 2 CP at 338. The County asserts that the matrix indicates that the WB parcel's "SW tip [is] adjacent to [a] UGA" rather than stating that parcel WB is not adjacent to the Washougal UGA. Resp't MacDonald Living Trust Suppl. Br. at 3. The County's matrix does not contain the asserted language and actually states that parcel WB is "[n]ot adjacent to [the] Washougal UGA." AR at 2247. Moreover, a review of the Washougal UGA map attached to the *883 County's matrix reveals that parcel WB does not touch the former Washougal UGA boundary. Accordingly, substantial evidence supports the Growth Board's finding that parcel WB is not adjacent to the Washougal UGA.
¶ 75 Next, we review the third prong of the Lewis County test, the only prong that the County assigned error to, to determine whether the Growth Board adequately reviewed all the statutory and regulatory factors when making its noncompliance finding. Our review of the Growth Board's analysis of the WB parcel reveals that the Growth Board failed to make an adequate record of its consideration of most of the WAC factors. The Growth Board's analysis and finding of fact 40, the only formal finding specific to parcel WB, discusses soil characteristics, tax base expansion benefits, and adjacency of the parcel to the existing UGA. But the record does not show that the Growth Board considered all the WAC factors in its review such that it could have had a "firm and definite conviction" that the County made a mistake in its dedesignation decision insofar as the County made its decision based on the third Lewis County test prong. Soccer Fields, 142 Wash.2d at 552, 14 P.3d 133. Accordingly, we remand the Growth Board's decision for parcel WB to the Growth Board for further consideration.[32]

CONCLUSION
¶ 76 Our opinion resolves the issues in this case with three major holdings in addition to our evaluation of the parcel-specific analysis of the Growth Board's actions. First, county GMA planning decisions are not final when they have been appealed and have an unresolved legal status. Second, although a county's legislative body and the Growth Board can take actions that affect issues currently pending for review in this court, its actions may moot issues pending review. And, third, we affirm the Growth Board's ability to review challenged county GMA planning decisions in light of all the evidence in the record. In accordance with this opinion, we remand to the Growth Board for further consideration on parcels VA, VA-2, and WB while affirming the Growth Board in all other challenged aspects.
We concur: ARMSTRONG, P.J., and HUNT, J.
NOTES
[1] This opinion refers to the 19 parcels using the County's original planning designation names. The parcel names included the nearby urban growth area to which the County intended to add the parcel. The 19 parcels are City of Battle Ground parcels BB and BC; City of Camas parcels CA-1 and CB; City of La Center parcels LA, LB-1, LB-2, LC, and LE; City of Ridgefield parcels RB-1, RB-2, and RC; City of Vancouver parcels VA, VA-2, VB, VC, and VE; and City of Washougal parcels WA and WB.
[2] Former RCW 36.70A.130(1), (3) (2006). We note that under former RCW 36.70A.130(1)(c), counties may simultaneously review comprehensive plan land use elements and UGA boundaries.
[3] As of July 1, 2010, the three regional Growth Management Hearings Boards were consolidated into a single statewide board composed of seven appointed members who are then constituted into three-member panels to hear cases. LAWS OF 2010, ch. 211, §§ 4-5, 18.
[4] This case involves multiple interveners with interests in specific land areas. For ease to the reader, in this opinion we attribute almost all of the respondent parties' actions to the County. But we discuss and attribute actions to the intervening parties, as necessary, in clarifying footnotes.
[5] Lewis County established "Soccer Fields" as a short form for 142 Wash.2d 543, 14 P.3d 133. Lewis County, 157 Wash.2d at 497, 139 P.3d 1096.
[6] The parties asserted on appeal only that the Growth Board, and by extension this court, did not have the authority to review the County's decisions on these parcels because the County no longer had jurisdiction over them.
[7] At oral argument, the County suggested that the 2004 comprehensive plan included in the record was never finalized. Our review of previous Growth Board decisions does not support this claim. Although there previously were challenges to parts of the 2004 comprehensive plan, the Growth Board ultimately found all the challenged portions compliant with the GMA. Bldg. Assoc. of Clark Cnty., et al., v. Clark County, et al., No. 04-2-0038c, 2005 WL 3392958, at *32 (W. Wash. Growth Mgmt. Hr'gs Bd., Nov. 23, 2005).
[8] Karpinski also challenged the County's environmental review and public participation processes. The Growth Board found that these processes contained no clearly erroneous errors. Karpinski did not cross-appeal these Growth Board determinations for review to the superior court and, thus, these issues are not part of this appeal.
[9] Although the Growth Board's procedural history of this case lists the Growth Board's hearing date as April 1, 2008, the transcript of the hearing in the administrative record indicates that the hearing occurred on April 8, 2008.
[10] Our review of the entire record reveals that the matrix is an accurate summation of the County's considerations and deliberations concerning the 19 parcels. The County's staff essentially read the matrix information for each parcel over the course of several County commissioner meetings. The commissioners made comments that were later included in the last column on the matrix under the heading "[Board of County Commissioners] Deliberation/Decision." AR at 2241-47.
[11] The Growth Board's amended order did not substantively differ from its original order. The amended final order corrected "clerical and grammatical errors," deleted duplicative portions in the original order, and renumbered the Growth Board's findings. 2 Clerk's Papers (CP) at 263.
[12] Technically, La Center filed the appeal to the superior court, noting that the Growth Board reversed the County on 10 different parcels neglecting to include parcel BC in its listand challenging only issues related to La Center parcels. The other parties in this appeal then joined La Center's appeal, and all the parties, including Karpinski, limited their arguments to the Growth Board's noncompliance/invalidity findings of the 11 reversed parcels.
[13] The parties' stipulation and the superior court's order did not explicitly identify parcel CA-1 by name; instead, the stipulation and order referenced "the GM Camas property" and the reversal of the Growth Board "with respect to GM Camas, LLC." AR at 3277-78. In its June 12, 2009 order, the superior court identified the subject matter of the stipulation as parcel CA-1.
[14] Although the County's arguments do not relate to any of its assigned errors on appeal, RAP 1.2(a) permits liberal interpretation of the rules to promote justice and facilitate a decision on the merits. We exercise this discretion and consider the County's argument as an allegation that the Growth Board committed an error of law pursuant to RCW 34.05.570(3)(d) of the APA when entering noncompliance findings for parcels CA-1, CB, and RB-2. In light of the arguments contained in the administrative record that were presented to the superior court and Growth Board regarding the jurisdictional effect of the annexations, and the County's appellate arguments that issues for parcels CA-1, CB, and RB-2 are now moot, the nature of the challenge is clear in the briefing. See Daughtry v. Jet Aeration Co., 91 Wash.2d 704, 709-10, 592 P.2d 631 (1979) (Reviewing the merits of a challenge on appeal, despite a failure to strictly comply with RAP 10.3, where the nature of the challenge was "perfectly clear[] and the challenged finding is set forth in the appellate brief."); Hitchcock v. Dep't of Ret. Sys., 39 Wash.App. 67, 72 n. 3, 692 P.2d 834 (1984) (Reviewing the merits of a challenge to a finding on appeal, despite technical violations of RAP 10.3 where the nature of the challenge was clear and the challenge to the finding extensively discussed in the appellate briefing.), review denied, 103 Wash.2d 1025 (1985).
[15] In our June 1, 2010 order relating to jurisdiction, we asked the parties about possible misrepresentations made to the superior court regarding the parcel CA-1 annexation. In light of our analysis of issues related to parcel CA-1, a discussion and resolution of any misrepresentations is unnecessary.
[16] RAP 7.2(e) states in relevant part, "If [a] trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision."
[17] RCW 36.70A.330 arguably requires the Growth Board to review a county's progress toward achieving compliance and to enter an order removing its original findings of noncompliance despite any pending review by this court. After entering a finding of noncompliance and allowing the County time to come into compliance with the GMA, "the board shall set a hearing for the purpose of determining whether the state agency, county, or city is in compliance with the requirements of this chapter.... The board shall issue any order necessary to make adjustments to the compliance schedule and set additional hearings as provided in subsection (5) of this section." RCW 36.70A.330(1)-(2) (emphasis added). We note that this practice makes determining whether a Growth Board's order is final for purposes of appeal under RAP 2.1(a)(1), as opposed to discretionary review under RAP 2.1(a)(2), problematic. In addition, to the extent that the ruling appealed is no longer the final ruling (in effect), an opinion from this court could turn out to be an advisory opinion in violation of To-Ro Trade Shows v. Collins, 144 Wash.2d 403, 416, 27 P.3d 1149 (2001), cert. denied, 535 U.S. 931, 122 S.Ct. 1304, 152 L.Ed.2d 215 (2002), and Commonwealth Ins. Co. of Am. v. Grays Harbor County, 120 Wash.App. 232, 245, 84 P.3d 304 (2004) (citing Wash. Beauty Coll., Inc. v. Huse, 195 Wash. 160, 164, 80 P.2d 403 (1938)).
[18] On appeal, no party clearly identifies the portions of the APA that they rely on in their assignments of error. But RAP 1.2(a) permits liberal interpretation of the rules and allows appellate review despite technical violations where proper assignment of error is lacking but the nature of the challenge is clear and the challenged findings are set forth in the party's brief. Green River Cmty. Coll. Dist. 10 v. Higher Ed. Pers. Bd., 107 Wash.2d 427, 431, 730 P.2d 653 (1986). Here, it is quite clear from the briefing that the two issues on appeal are whether the Growth Board correctly interpreted and applied the GMA and whether substantial evidence supports various parts of the Growth Board's final decision and order.
[19] Our Supreme Court evaluated two statutes when developing the Lewis County definition of "agricultural land":

RCW 36.70A.030(2), which reads:
"Agricultural land" means land primarily devoted to the commercial production of horticultural, viticultural, floricultural, dairy, apiary, vegetable, or animal products or of berries, grain, hay, straw, turf, seed, Christmas trees not subject to the excise tax imposed by RCW 84.33.100 through 84.33.140, finfish in upland hatcheries, or livestock, and that has long-term commercial significance for agricultural production.
(emphasis added) and
RCW 36.70A.030(10), which reads:
"Long-term commercial significance" includes the growing capacity, productivity, and soil composition of the land for long-term commercial production, in consideration with the land's proximity to population areas, and the possibility of more intense uses of the land.
As evidenced by this case, since Lewis County some counties and the Growth Board have used the term ALLTCS to describe lands rather than using the term "agricultural lands." Because long-term commercial significance is part of the working definition of "agricultural lands," "agricultural lands" and ALLTCS are synonymous terms.
[20] Moreover, in this instance, the County incorporated the WAC factors in its comprehensive plan as the approach used to analyze whether lands qualify as ALLTCS.
[21] We note that even though a county's comprehensive plan amendments are presumed valid upon adoption, under RCW 36.70A.320(1), a county's previous determinations and designations of land are still relevant to the analysis. A significant goal of the GMA is to identify, maintain, enhance, and conserve agricultural lands. See RCW 36.70A.020(8); Soccer Fields, 142 Wash.2d at 558, 14 P.3d 133. This goal suggests there is relevance of a county's previous designation of land as ALLTCS because otherwise there would be no way for a county to maintain and conserve these lands over time. But under the GMA it is unclear, and the legislature may want to consider and provide direction on, what weight a county should give to prior agricultural designations during subsequent comprehensive plan reviews. Based on the goals of maintaining and conserving agricultural lands, it appears the proper weight is deference to the original designation. See RCW 36.70A.020(8); Soccer Fields, 142 Wash.2d at 558, 14 P.3d 133; see Yakima County v. E. Wash. Growth Mgmt. Hearings Bd., 146 Wash.App. 679, 688-89, 192 P.3d 12 (2008).
[22] In this section of the opinion, we attribute to the County all arguments presented by La Center and the County for ease to the reader.
[23] Although the matrix indicates that parcel LB-1's eastern boundary was adjacent to the then existing La Center UGA, a map of the parcel attached to the matrix belies this characterization.
[24] La Center indicated in a supplemental brief that it did not challenge finding of fact 46 in its appeal to the superior court or to this court. When the Growth Board filed its amended final decision deleting duplicative portions, the numbering of its factual findings changed. Finding of fact 46 in the May 14, 2008 final order became finding of fact 43 in the amended June 3, 2008 final order.
[25] In its briefing, La Center argues that these parcels are characterized by urban growth because water is located two miles away and La Center's waste management plant has confirmed it has the capacity to serve these parcels. La Center provides no citations to the record to support this factual assertion. Though the County discussed sewer capacity during its preliminary discussions about the La Center parcels, the discussions appear to reference information contained outside the record. But because La Center did not challenge finding of fact 43, it is a verity and arguments about evidence conflicting with this finding are irrelevant.
[26] It appears that the County relied on an individual County commissioner's belief in the difficulties in obtaining water rights or accessing water for farming on these parcels. We could not find anything in the record to support the commissioner's opinion that it would be hard to get water and/or water rights to these parcels. The County commissioner merely states this belief, which in and of itself does not constitute substantial evidence supporting the County's decision.
[27] Also, La Center's mayor stated in a letter to the County commissioners, "[T]he City's objective in the current UGA expansion has been to urbanize the I-5 Junction as part of the City's incorporated area in an effort to diversify the City's economic base." AR at 1817.
[28] On January 12, 2011, La Center filed a motion requesting that we take judicial notice of the United States Department of the Interior's December 2010 decision to approve the Cowlitz Tribe's fee-to-trust application of approximately 152 of the 245 acres in parcel LB-2. The Department of Interior's approval allows the tribe to establish a reservation and indicates the land is eligible for gaming under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721. But that La Center and the County three years ago accurately predicted the approval of the trust application does not change our analysis. We, and the Growth Board, must consider the evidence and circumstances of the land at the time of the County's decision to determine whether the County complied with the GMA when making its land use decisions. Otherwise, the County might have improperly developed the land should its speculative predications have failed to come to fruition. Moreover, even though the Cowlitz Tribe's federal trust request has now been approved, the possible building of a casino is still too attenuated to support the County's 2007 dedesignation decision. Among other practical considerations, financing to build the infrastructure of the reservation, let alone the intended casino, is unknown. And the effects of the recent economic recession may very well bring about delay or abandonment of some or all of the tribe's development plans, even plans that are desirable and were created with good faith intentions to complete. The possibility of building a casino and the impact on the surrounding agricultural productivity of the land was too speculative in 2007 to support the County's decisions, and it remains speculative even under the present circumstances. And even if the sewer and projected infrastructure materializes, they might serve only the tribal trust lands.
[29] In this section, we attribute all arguments presented by Renaissance Homes, which has interest in the VA parcel, and the County to the County for ease to the reader. Also, the parties acknowledge a scrivener's error in the administrative record on the Vancouver West Map attached to the County's matrix where parcel "VA-1" should be labeled "VA-2."
[30] Because we remand on these grounds, we need not consider other arguments such as a challenge to finding of fact 33 regarding the adequacy of the Growth Board's evaluation of the WAC factors for the VA and VA-2 parcels.
[31] In this section, we attribute to the County all arguments presented by MacDonald Living Trust and the County for ease to the reader. We note that the record is not clear whether MacDonald owns all of or only a portion of parcel WB.
[32] Because of the basis for our remand, we need not address arguments that parcel WB should be dedesignated and incorporated into the Washougal UGA to ensure that enough land is available for development to accommodate expected population growth.