236 P.3d 975 (2010)
SHAW FAMILY LLC, Appellant/Cross Respondent,
v.
ADVOCATES FOR RESPONSIBLE DEVELOPMENT and John E. Diehl, Respondents/Cross Appellants, and
Western Washington Growth Management Hearings Board and Mason County, a political subdivision of the State of Washington, Respondents.
No. 38671-2-II.
Court of Appeals of Washington, Division 2.
August 5, 2010.
*976 Jerald R. Anderson, Attorney at Law, Alan D. Copsey, Office of the Attorney General, Olympia, WA, Monty Dale Cobb, Mason County Prosecutor's Office, Shelton, WA, for Respondents.
Stephen Talcott Whitehouse, Attorney at Law, Shelton, WA, for Appellant/Cross-Respondent.
Advocates for Responsible Development, Shelton, WA, Appearing pro se.
John Diehl, Shelton, WA, Appearing pro se.

PART PUBLISHED OPINION
VAN DEREN, J.
¶ 1 The Shaw Family LLC appeals a Growth Management Act (GMA), chapter 36.70A RCW, decision by the Western Washington Growth Management Hearings Board (WWGMHB), arguing that the WWGMHB lacked subject matter jurisdiction, applied incorrect law, and violated the Shaw Family's constitutional rights. The Shaw Family also argues that the administrative appeal by John E. Diehl and Advocates for Responsible Development (ARD) is moot. Diehl and ARD cross appeal, arguing, among other things, that the Lewis County Superior Court judge abused his discretion in imposing CR 11 sanctions against Diehl.[1]
¶ 2 We hold that the WWGMHB had subject matter jurisdiction over this petition and did not err in ruling that Mason County's comprehensive plan amendment violated the GMA. Although it does not appear from the record before us that the Lewis County court abused its discretion in imposing CR 11 sanctions, the court did err in failing to enter written factual findings and legal conclusions to support its decision. Therefore, we affirm the WWGMHB's decision and remand only for the Lewis County Superior Court judge to determine whether CR 11 sanctions are appropriate and, if so, to enter written factual findings and legal conclusions.

FACTS

Background
¶ 3 For nearly a century, the Shaw Family *977 owned a single parcel of more than 90 acres[2] in rural Mason County (County). The parcel was previously designated as "Long-Term Commercial Forest." Admin. Record (AR) at 432. While much of the surrounding area has traditionally been zoned as long term commercial forest, landowners have started to develop properties along the nearby Matlock-Brady Road corridor between Matlock and Brady, Washington. In June 2006, seeking to develop its own land, the Shaw Family applied to rezone this parcel as "Inholding"[3] and to amend the County's comprehensive plan and future land use map to permit the rezone. AR at 432.
¶ 4 ARD is an unincorporated nonprofit association that monitors Mason county land use decisions and Diehl is ARD's president. On December 19, 2006, Diehl submitted a letter to the County on behalf of ARD opposing the Shaw Family parcel's rezone and any amendment to the County's comprehensive plan. County staff also recommended against the Shaw Family's proposed rezone and comprehensive plan amendment, but on December 27, the County passed Mason County Ordinance 139-06 (Dec. 27, 2006), rescinded in part by Ordinance 19-08 (Feb. 5, 2008),[4] approving the proposal to amend the plan and its future land use map.

WWGMHB Review
¶ 5 On February 20, 2007, ARD challenged Ordinance 139-06 by submitting a petition for review to the WWGMHB, signed by Diehl as ARD's representative.[5] While ARD made a number of arguments, the only one relevant to the present appeal was that the County amended its comprehensive plan for the Shaw Family in violation of the GMA. The petition named only the County as a respondent. The WWGMHB issued a notice of hearing and preliminary schedule to ARD, Diehl, and the County. The Shaw Family was not notified of the appeal or the hearing.
¶ 6 On March 30, the County's deputy prosecuting attorney informally notified the Shaw Family's counsel of the appeal. A few days later, WWGMHB held a prehearing conference with Diehl, ARD, and the County; the Shaw Family was unaware of this conference.
¶ 7 On April 6, the Shaw Family moved to intervene in the WWGMHB administrative appeal. The WWGMHB granted the motion but limited the Shaw Family's ability to participate, consistent with standard conditions that the WWGMHB imposes on intervenors.[6]
¶ 8 The County unsuccessfully moved to dismiss the issue relating to Ordinance 139-06, which amended the comprehensive plan and made change to the future land use map. The County also unsuccessfully moved for reconsideration. The Shaw Family moved to dismiss Diehl because he did not meet the requirement for GMA participation standing. The Shaw Family also moved to dismiss ARD because it was not registered as a *978 nonprofit association with either the Secretary of State's office or the Department of Revenue. The WWGMHB dismissed Diehl for lack of personal standing, but ruled that ARD had participation standing by virtue of Diehl's remarks, and permitted Diehl to represent ARD in the proceedings.[7]
¶ 9 The Shaw Family submitted a supplemental memorandum to the WWGMHB stating that the Shaw Family had administratively segregated its parcel. The Shaw Family argued that ARD's administrative appeal was, therefore, moot because the Mason County Code (MCC) required that a "Long Term Commercial Forest" designation be a minimum of 80 acres and the parcel no longer qualified for that zoning designation. AR at 736.
¶ 10 After a hearing on the merits, the WWGMHB ruled that the County's comprehensive plan amendment, Ordinance 139-06, violated both (1) the GMA's internal consistency requirement and (2) the County's planning policy requirement that applicants for an amendment to the comprehensive plan's future land use map must "demonstrate that the property can no longer be feasibly used as a commercial forest." AR at 799.
¶ 11 The Shaw Family moved for reconsideration, requesting a decision on the mootness issue. The WWGMHB denied this motion but amended its final order to reject the mootness argument.

Superior Court
¶ 12 The Shaw Family filed a petition for judicial review in Mason County Superior Court challenging the WWGMHB's decision under cause number XX-X-XXXXX-X. Because Diehl was personally dismissed from the earlier proceedings, the Shaw Family named ARD, the County, and WWGMHB as respondents.
¶ 13 Diehl and ARD also filed a petition for review in Mason County Superior Court under cause number XX-X-XXXXX-X, challenging the WWGMHB's ruling on Diehl's personal standing, as well as two unrelated issues arising from the WWGMHB's final ruling. Diehl filed the actions "pro se and for Petitioner ARD pro se." Clerk's Papers (CP) at 315. Diehl unsuccessfully moved to consolidate the two superior court cases.
¶ 14 The trial court precluded Diehl from representing ARD in the Shaw Family case because Diehl was not an attorney but denied the Shaw Family terms against Diehl. It also denied Diehl's motion to intervene or appear pro se in the Shaw Family case as a member of ARD. Diehl unsuccessfully moved to join himself and/or to extend time before a Lewis County Superior Court judge, hearing the motion on behalf of the Mason County Superior Court. He also unsuccessfully moved for revision. The Shaw Family asked for CR 11 sanctions. The Lewis County court also ordered $2,000 in CR 11 sanctions against Diehl. Diehl filed a response to the motion for sanctions.
¶ 15 The trial court issued a memorandum opinion,[8] jointly ruling on the merits of both the Shaw Family case and the other Diehl and ARD case. The court upheld the WWGMHB's rulings regarding both ordinance 139-06 and Diehl's dismissal for lack of standing.
¶ 16 The Shaw Family appeals and Diehl cross appeals.

ANALYSIS

Subject Matter Jurisdiction
¶ 17 The Shaw Family maintains that the WWGMHB had no subject matter jurisdiction here because the County enacted only a site specific rezone that did not affect the *979 County's comprehensive plan.[9] Instead, the Shaw Family contends that the Land Use Petition Act (LUPA), chapter 36.70C RCW, alone, could have provided Diehl and ARD the relief they sought. We disagree.
¶ 18 We review the question of subject matter jurisdiction de novo. Somers v. Snohomish County, 105 Wash.App. 937, 941, 21 P.3d 1165 (2001). Although we give substantial weight to the WWGMHB's legal interpretation of the GMA, "we do not defer to an agency the power to determine the scope of its own authority." US W. Commc'n., Inc. v. Utils. & Transp. Comm'n, 134 Wash.2d 48, 56, 949 P.2d 1321 (1997); see former RCW 36.70A.280(1) (2003), amended by Laws of 2008, ch. 289, § 5; Laws of 2010, ch. 211, § 7;[10]Lewis County v. W. Wash. Growth Mgmt. Hearings Bd., 157 Wash.2d 488, 498, 139 P.3d 1096 (2006); City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 46, 959 P.2d 1091 (1998). Finally, we interpret ordinances to achieve a local government's intent, harmonizing each provision in relation to the others. Jones v. King County, 74 Wash.App. 467, 475, 874 P.2d 853 (1994).
¶ 19 For county planning under the GMA, land is characterized as urban, rural, or natural resource. Karpinski v. Clark County, No. 07-2-0027, 2008 WL 2783671, at *23, 40 (W. Wash. Growth Mgmt. Hearings Bd. Jun. 3, 2008); see former RCW 36.70A.030(16) (2005), amended by Laws of 2009, ch. 565, § 22; former RCW 36.70A.070(5)(b) (2005) amended by Laws of 2010, Spec. Sess., ch. 26, § 6; former RCW 36.70A.110(1) (2004) amended by Laws of 2009, ch. 121, § 1; Laws of 2009, ch. 342, § 1; Laws of 2010, ch. 211, § 1; Woods v. Kittitas County, 162 Wash.2d 597, 608-09, 174 P.3d 25 (2007). Redesignation or rezoning of land is commonplace within urban or rural areas, and appropriate redesignations do not change the category of those lands. Town of Friday Harbor v. San Juan County, No. 99-2-0010c, 2002 WL 599680, at *3 (W. Wash. Growth Mgmt. Hearings Bd. Mar. 28, 2002). But a change of designation from resource land to either urban or rural is a significant change, occasionally termed "de-designation." City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 164 Wash.2d 768, 782, 795, 193 P.3d 1077 (2008); Lewis County, 157 Wash.2d at 505 n. 15, 139 P.3d 1096; Town of Friday Harbor, 2002 WL 599680, at *3. Although the parties have not clarified under which category the "Inholding" designation falls,[11] the Shaw Family's requested rezone appears to have required a comprehensive plan amendment. Even if this rezone did not compel the County to amend its comprehensive plan, it nevertheless chose to do so.
¶ 20 Under the GMA, the County adopted a comprehensive plan and various development regulations. See RCW 36.70A.040; MCC § 8.52.020(5). A "comprehensive plan" is the "generalized coordinated land use policy statement of the governing body of a county," former RCW 36.70A.030(4), that "consist[s] of a map or maps, and descriptive text covering objectives, principles, and standards *980 used to develop the comprehensive plan." Former RCW 36.70A.070. This comprehensive plan must "be an internally consistent document and all elements shall be consistent with the future land use map." Former RCW 36.70A.070.
¶ 21 The legislature established three quasi-judicial growth management hearings boards to rule on challenges to local governments' land use planning.[12] RCW 36.70A.250; former RCW 36.70A.280(1)(a); Lewis County, 157 Wash.2d at 510-11, 139 P.3d 1096. The WWGMHB has jurisdiction to review petitions challenging whether the County's comprehensive plan, development regulations, and permanent amendments to the plan comply with GMA requirements.[13]See RCW 36.70A.250(1)(c); former RCW 36.70A.280(1)(a); former RCW 36.70A.290(2) (1997), amended by Laws of 2010, ch. 211, § 8. The WWGMHB does "not have jurisdiction to decide challenges to site-specific land use decisions because site-specific land use decisions do not qualify as comprehensive plans or development regulations."[14]Woods, 162 Wash.2d at 610, 174 P.3d 25; see former RCW 36.70A.030(7); RCW 36.70B.020(4). LUPA governs site specific land use decisions and the superior court has exclusive jurisdiction over petitions regarding site specific land use challenges.[15] Former RCW 36.70C.030(1)(a)(ii) (2003), amended by Laws of 2010, Spec. Sess., ch. 7, § 38; Woods, 162 Wash.2d at 610, 174 P.3d 25.
¶ 22 Here, ARD's petition for review challenged Ordinance 139-06. The ordinance is titled: "AMENDMENTS TO THE MASON COUNTY COMPREHENSIVE PLAN AND MASON COUNTY PARKS AND RECREATION COMPREHENSIVE PLAN." CP at 73. The ordinance provides:
AN ORDINANCE amending the Mason County Comprehensive Plan and development standards, which include Comprehensive Plan Chapter III-7 Water Resources Policies, Chapter VI Capital Facilities Element, and the Future Land Use Map as shown in Chapter IV Land Use (decision to approve the change in designation request by the Shaw Family LLC);[] and the revised Mason County Parks and Recreation Comprehensive Plan, under the authority of Chapters 36.70 and 36.70A RCW.
CP at 73. The Shaw Family itself applied for this comprehensive plan amendment.
¶ 23 ARD's petition explicitly challenged, among other things, whether this ordinance complied with the GMA:
3.15. In rezoning land designated as [long term commercial forest] land without showing that its continued use for the production of timber resources is not reasonable or that it no longer satisfies the *981 criteria for designations as [long term commercial forest] land, has the County in Ordinance 139-06 failed to maintain the internal consistency of its Comprehensive Plan and Future Land Use Map required by [former] RCW 36.70A.070 and does its action interfere substantially with the goal of conserving productive forest lands and discouraging incompatible uses (RCW 36.70A.020(8))?
AR at 6.
¶ 24 Ordinance 139-06 explicitly amended the County's comprehensive plan and ARD's petition challenged this ordinance's GMA compliance. Thus, we hold that the WWGMHB had jurisdiction to review this petition.
¶ 25 We affirm the WWGMHB's decision. For reasons we address in the unpublished portion of this opinion, we remand to the Lewis County Superior Court judge for the limited purpose of determining whether CR 11 sanctions are appropriate and, if so, to enter written factual findings and legal conclusions.
¶ 26 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HUNT, J., and PENOYAR, C.J.
NOTES
[1] In a recent decision involving the same parties and underlying facts, we held that Diehl lacked personal participation standing under the GMA and thus could not appeal the WWGMHB's decision. Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd., noted at 154 Wash.App. 1051, 2010 WL 703267, at *1, *3-*4 (Mar. 2, 2010). We also held that Diehl, a nonlawyer, may not represent ARD in court. Advocates, 2010 WL 703267, at *1-*3. Therefore, we did not reach the merits of Diehl's appeal and dismissed ARD's appeal. Advocates, 2010 WL 703267, at *1.

Here, we dismissed ARD's cross appeal and limited Diehl's argument only to his cross appeal regarding the CR 11 sanctions. Order Dismissing Cross Appeal of Advocates for Responsible Development and Limiting Cross Appeal of John E. Diehl, Shaw Family v. W. Wash. Growth Mgmt. Hearings Bd., No. 38671-2-II, at 2 (March 10, 2010). Diehl did not participate in oral arguments.
[2] The assessor's office listed the parcel as 97.80 acres, but the Shaw Family believes the property to be approximately 93 acres.
[3] The Inholding designation is similar to Rural Residential-10, which allows one residence per ten acres.
[4] Ordinance 19-08 rescinds specific portions of Ordinance 139-06 related to the Shaw Family property, to bring the Mason County Comprehensive Plan into compliance with the WWGMHB's decision. But, this dispute is not moot because the Mason County Board of Commissioners specifically retained jurisdiction in the event of a favorable resolution on appeal. Therefore, we do not refer to Ordinance 139-06 as "former."
[5] ARD also challenged ordinances 112-06 and 138-06, which the County had recently adopted. Those challenges are not a part of this appeal.
[6] GMA procedures provide that:

If the person qualifies for intervention, the presiding officer may impose conditions upon the intervenor's participation in proceedings, either at the time that intervention is granted or at any subsequent time. Conditions may include:
(a) Limiting the intervenor's participation to designated issues in which the intervenor has a particular interest as demonstrated by the motion;
(b) Limiting the intervenor's use of discovery, cross-examination, and other procedures so as to promote the orderly and prompt conduct of the proceedings; and
(c) Requiring two or more intervenors to combine their presentations of evidence and argument, cross-examination, discovery, and other participation in the proceedings.
WAC 242-02-270(3).
[7] A nonlawyer who is a member of a group may represent that group before the WWGMHB. Miotke v. Spokane County, No. 05-1-0007, 2005 WL 3477427, at *3 (E. Wash. Growth Mgmt. Hearings Bd. Nov. 14, 2005); see WAC 242-02-110(1).
[8] A Kitsap County Superior Court judge, sitting for Mason County Superior Court, entered the memorandum opinion ruling on the Shaw Family's appeal. The record does not reflect why a Kitsap County Superior Court judge, a Lewis County Superior Court judge, and a Mason County Superior Court judge all made rulings in this case. Mason County Superior Court has two judges, one of whom recused herself from the final decision. The record does not indicate why Mason County Superior Court's other judge did not participate in the case.
[9] The Shaw Family appears to argue that an unchallenged ordinance actually rezoned the parcel but fails to explain why this defeats the WWGMHB's jurisdiction over the challenged comprehensive plan amendment. "[W]hen a zoning amendment is being contemplated, it is a common practice to amend the comprehensive plan just before adopting the zoning amendment." 17 William B. Stoebuck & John W. Weaver, Washington Practice: Real Estate: Property Law § 4.11, at 223 (2d ed. 2004). Here, the County decided to amend its comprehensive plan, perhaps by necessity, and this legislative action is what the WWGMHB properly reviewed.
[10] The legislature has amended sections of the GMA cited in this opinion nine times since this case began. None of these amendments included changes that affect our review.
[11] Inholding and long term commercial forests are regulated under the County's comprehensive plan. The Shaw Family asserts without authority that (1) "the inholding designation is ... a form of forest lands with slightly relaxed development criteria, but with significant protections for forest lands" and (2) "[t]he purpose of inholding lands is to permit limited development adjacent to [long term commercial forest] so that they remain viable." Amended Br. of Appellant/Cross Resp't at 25, 34. The County defined "Inholding lands" as "lands surrounded by long-term commercial forests, but which are not suitable due to parcel size or other constraint for that purpose. Inholding lands may be developed, but only in a manner which assures the viability of the abutting forest land." Ordinance 139-06, § 17.02.049.
[12] The legislature recently consolidated these three boards into a single board. Laws of 2010, ch. 211, § 4.
[13] Asserting that the comprehensive plan is only a "`policy statement'" and its map is only "an appendix that is a reflection of decisions implemented by application of development regulations," the Shaw Family apparently claims that the WWGMHB had no authority to review amendments to such insignificant documents. Amended Br. of Appellant/Cross Resp't at 18 (quoting former RCW 36.70A.030(4)). But the legislature considered the map as a part of the comprehensive plan, not an appendix. Former RCW 36.70A.070 ("[t]he comprehensive plan ... shall consist of a map or maps, and descriptive text"). This is why the legislature created these boards and the Shaw Family misapprehends that the GMA does not give these documents the force of law. Former RCW 36.70A.280(1)(a).
[14] The statutory definition for "`[d]evelopment regulations'" excludes "project permit application[s] as defined by RCW 36.70B.020," even if a resolution or ordinance reflects the decision to approve a project permit application. Former RCW 36.70A.030(7). A "`project permit application'" excludes "the adoption or amendment of a comprehensive plan," as we have here. RCW 36.70B.020(4).
[15] LUPA provides the "exclusive means" of obtaining judicial review of "land use decisions," excluding review of local land use decisions "that are subject to review by a quasi-judicial body created by state law, such as ... the growth management hearings board." Former RCW 36.70C.030(1)(a)(ii) (2003). A "`land use decision'" is a final local determination on an "application for a project permit or other governmental approval required by law before real property may be improved developed, modified, sold, transferred, or used," but not "applications for legislative approvals such as area-wide rezones and annexations." Former RCW 36.70C.020(1)(a) (1995).