[No. 39601-7-II. Division Two. April 20, 2011.]

CLALLAM COUNTY, *Respondent*, v. DRY CREEK COALITION ET AL., *Appellants*, THE WESTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, *Respondent*.

*Tim Trohimovich* (of *Futurewise*); *Gerald B. Steel*; and *Robert A. Beattey* (of *Spencer Law Firm LLC*), for appellants.

*Deborah S. Kelly, Prosecuting Attorney*, and *Douglas E. Jensen, Deputy*, for respondent Clallam County.

*Robert M. McKenna, Attorney General*, and *Marc Worthy, Assistant*, for respondent Western Washington Growth Management Hearings Board.

¶1 QUINN-BRINTNALL, J. — In 2007, after completing a required Growth Management Act[1] (GMA) review, Clallam County (County) adopted Resolution No. 77 providing that its comprehensive plan (Plan) and urban growth areas (UGA) remained compliant with the GMA and needed no amendments. Futurewise appealed to the Western Washington Growth Management Hearings Board (Growth Board).[2] Futurewise claimed that the County failed to review and revise parts of its Plan and UGAs that were noncompliant with the GMA in Resolution No. 77. Specifically, Futurewise challenged the adequacy of the nonmunicipal Carlsborg UGA's capital facilities plan and the use of two zoning density designations in rural areas.

¶2 The Growth Board ruled that the Carlsborg UGA's capital facilities plan did not comply with the GMA, in part because it failed to adequately plan for sewer services. The Growth Board also invalidated the use of two rural housing density zoning designations, rural moderate (R2) and western region rural moderate (RW2), because they established nonrural housing densities on rural lands. The County appealed to the Clallam County Superior Court, which reversed the Growth Board's decisions, ruling that the Growth Board (1) did not have jurisdiction to review the capital facilities plan's compliance with the GMA and (2) failed to identify a clear error that the County made when it established the R2 and RW2 housing density zoning designations. Futurewise appealed the superior court's decision to this court.

---

[1] Ch. 36.70A RCW.

[2] As of July 1, 2010, the three regional Growth Management Hearings Boards were consolidated into a single statewide board comprised of seven appointed members, who are then constituted into three-member panels to hear cases. LAWS OF 2010, ch. 211, §§ 4-5, 18.

¶3 We remand to the Growth Board for a factual determination on whether the State provided funding for a relevant GMA amendment,[3] which would make the amendment enforceable. Enforceability of this GMA amendment is a condition precedent to establishing the Growth Board's jurisdiction to review the County's unamended capital facilities plan. In addition, we decline the parties' invitation to issue an advisory opinion on the use of the R2 and RW2 housing density zoning designations.

## FACTS

¶4 The County originally adopted a Plan in 1967, but it created a new Plan in 1995, following the enactment of the GMA.[4] The GMA requires that a county review its Plan at least every 7 years, under former RCW 36.70A.130(4) (2006), and review its UGA designations every 10 years, under RCW 36.70A.130(3)(a).[5] The County began its first GMA-required plan review in 2004, and simultaneously began a review of its UGA designations. Former RCW 36.70A.130(4)(a).

¶5 On August 28, 2007, the County enacted a resolution and ordinance after completing its GMA reviews. Ordinance No. 827 amended the Clallam County Code (CCC) by adding a section identifying limited areas of more intensive rural development (LAMIRDs). The County also adopted Resolution No. 77, "Affirming That Clallam County Has Reviewed and Updated Its Countywide Comprehensive Plan, Regional Plans, and Development Regulations to Ensure Continued Compliance With Growth Management Act Standards and Policies." Administrative Record (AR) at 13. Resolution No. 77 did not amend the County's Plan, UGAs, or development regulations; instead, the resolution stated that the County had completed its required reviews

---

[3] LAWS OF 2002, ch. 154, § 2.

[4] The County's current Plan is codified at Title 31 Clallam County Code.

[5] In 2010, the legislature amended the deadlines for future mandatory GMA reviews; none impact this appeal. LAWS OF 2010, ch. 216.

and deemed the Plan and UGAs to be in compliance with the GMA.

¶6 Futurewise appealed Ordinance No. 827 and Resolution No. 77 to the Growth Board.[6] Futurewise assigned eight errors to the County's ordinance and resolution, three of which are relevant to this appeal. First, Futurewise alleged that the County (1) failed to review and revise the capital facilities plan for the Carlsborg UGA to ensure that adequate services are available and (2) erred when it enacted chapter 33.20 CCC, which outlines the zoning codes for the Carlsborg UGA, improperly allowing for urban land uses before the creation of a sewer system.[7] Futurewise emphasized concerns about the adequacy of sewer services, storm water facilities, parks, and police services in the Carlsborg capital facilities plan. Second, Futurewise challenged the total amount of land contained within the County's UGAs as too large in light of the most recent Office of Financial Management (OFM) population forecasts for the County.[8] Third, Futurewise claimed that the County failed to review and revise several rural housing densities in its Plan, specific to this appeal are the R2 and RW2 densities that allow for one dwelling unit per 2.4 acres, to ensure that urban growth does not occur outside of UGAs and LAMIRDs.[9]

¶7 On April 23, 2008, the Growth Board issued its final order and decision. Reviewing Futurewise's adequacy of services and capital facilities plan challenges to the

---

[6] The Dry Creek Coalition petitioned separately for review of Ordinance No. 827 and Resolution No. 77; the Growth Board consolidated the appeals. Dry Creek assigned errors related only to issues involving 29 designated LAMIRDs. The Growth Board found 9 of the LAMIRDs compliant with the GMA and 20 of the LAMIRDs noncompliant with the GMA. When the County appealed the Growth Board's decision to Clallam County Superior Court, it did not request review of any decisions related to LAMIRDs or issues Dry Creek raised. Accordingly, Dry Creek is not an active party in this appeal, and we do not review any issues related to Ordinance No. 827 and LAMIRDs in this opinion.

[7] This was issue six in Futurewise's appeal to the Growth Board.

[8] This was issue seven in Futurewise's appeal to the Growth Board.

[9] This was issue one in Futurewise's appeal to the Growth Board.

Carlsborg UGA, the Growth Board found some portions compliant with the GMA and some noncompliant. The Growth Board found that the County had preliminary plans to provide necessary sewer services to the Carlsborg UGA, but that it could not currently supply sewer services to support urban densities in the UGA. Accordingly, the Growth Board found chapter 33.20 CCC noncompliant with the GMA because it permitted urban uses of land before the creation of sewer services. In addition, the Growth Board concluded that the County's failure to adopt a sewer plan for the UGA "causes the Carlsborg UGA to substantially interfere with [former] RCW 36.70A.070(1), (2), and (12) [(2005)]."[10] Clerk's Papers (CP) at 115. For police services, the Growth Board found that the County identified in the capital facilities plan that police coverage for the UGA is "below [level of service] standards," but that the County failed to identify the necessary services to ensure adequate coverage or how to provide necessary funding. CP at 110. Accordingly, the Growth Board determined that the County's capital facilities plan for Carlsborg's police services was noncompliant with former RCW 36.70A.070(3)(b)-(d)'s requirements.[11] The Growth Board also concluded that Futurewise failed to meet its burden in challenging the

---

[10] We note a scrivener's error in the Growth Board's conclusion of law V where it cites to subsections (1), (2), and (12) of former RCW 36.70A.070. But former RCW 36.70A.070 does not contain a subsection (12). In context with the Growth Board's analysis and other conclusions, the Growth Board meant to cite to RCW 36.70A.020, which in relevant part provides,

(1) Urban growth. Encourage development in urban areas where adequate public facilities and services exist or can be provided in an efficient manner.

(2) Reduce sprawl. Reduce the inappropriate conversion of undeveloped land into sprawling, low-density development.

. . . .

(12) Public facilities and services. Ensure that those public facilities and services necessary to support development shall be adequate to serve the development at the time the development is available for occupancy and use without decreasing current service levels below locally established minimum standards.

[11] Former RCW 36.70A.070(3) provides,

A capital facilities plan element consisting of: (a) An inventory of existing capital facilities owned by public entities, showing the locations and capacities of the capital facilities; (b) a forecast of the future needs for such capital

adequacy of storm water and park facilities in the Carlsborg UGA's capital facilities plan.

¶8 Regarding the overall amount of land contained in the County's UGAs, the Growth Board determined that it had jurisdiction to consider Futurewise's challenge and deemed the UGA boundaries valid. The County asserted that because it had not amended any of the UGAs as part of its recent review, Futurewise's challenges to the 1995 and 2000 UGA designations were time barred. The Growth Board determined that a county is *required* to revise its UGA designations when OFM population projections change. RCW 36.70A.130(3)(b) (UGAs "shall be revised to accommodate the urban growth projected to occur in the county for the succeeding twenty-year period."). Accordingly, the Growth Board ruled that Futurewise's challenge was not time barred because it challenged the County's failure to revise the UGA boundaries after OFM population projection changes. But after deciding that it had jurisdiction to consider whether the County's UGAs encompass too much land, the two-member Growth Board could not reach an agreement on the merits of Futurewise's UGA boundary challenge. Accordingly, the Growth Board ruled that the UGA boundaries complied with the GMA because county GMA planning decisions are presumed valid on appeal and Futurewise failed to meet its burden to prove otherwise. *See* former RCW 36.70A.320(1) (1997).

¶9 Regarding the use of the R2 and RW2 housing density zoning designations, the Growth Board invalidated the use of the R2 and RW2 housing density zoning designations in rural areas and any plan policies, regulations, and maps that use these housing densities. The Growth Board found that the existing rural character of the County is "domi-

facilities; (c) the proposed locations and capacities of expanded or new capital facilities; (d) at least a six-year plan that will finance such capital facilities within projected funding capacities and clearly identifies sources of public money for such purposes; and (e) a requirement to reassess the land use element if probable funding falls short of meeting existing needs and to ensure that the land use element, capital facilities plan element, and financing plan within the capital facilities plan element are coordinated and consistent. Park and recreation facilities shall be included in the capital facilities plan element.

nated by lots of greater than five acres" and that the existing land patterns support a finding that "the rural character of Clallam County is a rural density of 1 [dwelling unit per] 5 acre[s]." CP at 109. The Growth Board concluded that the R2 and RW2 housing densities violated former RCW 36.70A.110 (2004) and that they substantially interfere with the GMA goals of encouraging urban growth in areas "where adequate public facilities and services exist or can be provided" and reducing urban sprawl. RCW 36.70A.020(1), (2).

¶10 On July 8, 2008, the County appealed portions of the Growth Board's decision to Clallam County Superior Court. The County sought review of the Growth Board's determination that (1) chapter 33.20 CCC, which permits urban uses of land before sewer services are available in the Carlsborg UGA, is noncompliant with the GMA and substantially interferes with GMA goals; (2) the Carlsborg UGA's capital facilities plan is noncompliant with the GMA because it does not adequately plan for sewer and police services; (3) the Growth Board had jurisdiction to review Futurewise's challenge to the amount of land contained in the County's UGAs; and (4) the R2 and RW2 housing densities conflict with the GMA's requirements.

¶11 On July 17, 2009, the superior court entered its final order. The superior court held that the Growth Board lacked jurisdiction to evaluate the Carlsborg UGA and reversed the Growth Board's decision regarding the adequacy of the capital facilities plan and the Growth Board's decision that chapter 33.20 CCC does not comply with the GMA. The superior court also reversed the Growth Board's decisions regarding the R2 and RW2 housing densities because it held that substantial evidence did not support the Growth Board's findings on this issue. Specifically, the superior court concluded that the Growth Board (1) failed to identify a clear error that the County committed; (2) erred by applying a bright-line housing density rule; and, accordingly, (3) failed to defer to the County's planning decisions. Futurewise timely appealed to this court.

¶12 After the parties appealed to this court, the Growth Board held a compliance hearing to review the County's steps toward bringing its Plan into compliance with the GMA. On November 5, 2009, the Growth Board entered a compliance order related to the County's actions addressing LAMIRDs that were previously found noncompliant and that the County had not appealed. In the same order, the Growth Board rescinded its finding of invalidity for the R2 and RW2 housing density zoning designations because "[b]y eliminating the use of the R2 and RW2 zones the County has removed the basis for finding that these zones substantially interfere with Goals 1 and 2 of the GMA" and because the County had adopted new innovative zoning techniques in their place to achieve similar density goals in some of the relevant land areas. Compliance Order (LAMIRDs and Rural Lands), *Dry Creek Coal. v. Clallam County*, No. 07-2-0018c, at 11-12 (W. Wash. Growth Mgmt. Hr'gs Bd., Nov. 5, 2009).[12] The Growth Board also found that Futurewise had failed to show that the County committed clear error when establishing these replacement zoning designations.[13]

## ANALYSIS

STANDARD OF REVIEW

■ ¶13 The GMA provides counties with broad discretion to develop comprehensive plans. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543,

---

[12] At our request, the County submitted a motion to supplement the record on appeal with the November 5, 2009 compliance order. The County's motion did not conform to the Rules of Appellate Procedure for moving to supplement the record. But because the Growth Board's decisions and orders are a matter of public record, we cite to the Growth Board's November 5, 2009 order like any authoritative Washington or federal court decision.

[13] So far as we have been made aware, no party appealed the Growth Board's November 5, 2009 decision.

561, 14 P.3d 133 (2000) (*Soccer Fields*).[14] A county's discretion, however, "is bounded . . . by the goals and requirements of the GMA." *Soccer Fields*, 142 Wn.2d at 561. The GMA's goals include encouraging development in areas already characterized by urban development, reducing sprawl, and ensuring that adequate public facilities and services are available to serve development at the time of occupancy. RCW 36.70A.020 (1), (2), (12).

¶14 The Growth Board is charged with determining whether county decisions comply with GMA requirements. Former RCW 36.70A.280 (2003); RCW 36.70A.320(3); *Lewis County v. W. Wash. Growth Mgmt. Hearings Bd.*, 157 Wn.2d 488, 497, 139 P.3d 1096 (2006). In carrying out its duties, the Growth Board can either (1) remand noncompliant decisions and ordinances to the county so it can bring them into compliance with the GMA or (2) invalidate part or all of the county's noncompliant comprehensive plan and/or development regulations. RCW 36.70A.300(3); former RCW 36.70A.302(1) (1997); *Lewis County*, 157 Wn.2d at 498 n.7.

¶15 The legislature specifically intended the Growth Board " 'to grant deference to counties and cities in how they plan for growth, consistent with the requirements and goals of' " the GMA. *Lewis County*, 157 Wn.2d at 498 (quoting former RCW 36.70A.3201 (1997)). Accordingly, at the Growth Board's level of review, a county's comprehensive plan and/or regulations are "presumed valid upon adoption." RCW 36.70A.320(1). This statutory deference requires that the Growth Board " 'shall find compliance' " unless it determines that a county action 'is clearly erroneous in view of the entire record before the [Growth B]oard and in light of the [GMA's] goals and requirements.' " *Lewis County*, 157 Wn.2d at 497 (quoting RCW 36.70A.320(3)); *see also* RCW 36.70A.320(2) (stating that a challenger has the burden to demonstrate that a county's action is not compliant with the GMA). A county's action is "clearly erroneous"

---

[14] *Lewis County* established *"Soccer Fields"* as a short form for 142 Wn.2d 543. *Lewis County v. W. Wash. Growth Mgmt. Hearings Bd.*, 157 Wn.2d 488, 497, 139 P.2d 1096 (2006).

if the Growth Board has a " 'firm and definite conviction that a mistake has been committed.' " *Thurston County v. W. Wash. Growth Mgmt. Hearings Bd.*, 164 Wn.2d 329, 340-41, 190 P.3d 38 (2008) (internal quotation marks omitted) (quoting *Lewis County*, 157 Wn.2d at 497).

¶16 The Administrative Procedure Act (APA), ch. 34.05 RCW, governs judicial review of Board actions, including the Growth Boards'. *Thurston County*, 164 Wn.2d at 341; *see also* RCW 36.70A.300(5). "The burden of demonstrating the invalidity of [an] agency action is on the party asserting the invalidity," here the County. RCW 34.05.570(1)(a); *Thurston County*, 164 Wn.2d at 341. On appeal, we sit in the same position as the superior court and apply the APA review standards directly to the record before the agency, here the Growth Board. *Soccer Fields*, 142 Wn.2d at 553 (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998)). In addition, like the Growth Board, we defer to the county's planning action unless the action is "clearly erroneous." *Brinnon Grp. v. Jefferson County*, 159 Wn. App. 446, 465, 245 P.3d 789 (2011); *see* RCW 36.70A.320(3); former RCW 36.70A.3201; *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 154 Wn.2d 224, 238, 110 P.3d 1132 (2005).

¶17 Under the APA, we grant relief from an agency's order after an adjudicative proceeding if we determine that

> (b) [t]he order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
>
> . . . .
>
> (d) The agency has erroneously interpreted or applied the law; [or]
>
> (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which

includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter. RCW 34.05.570(3).[15]

¶18 We review a Growth Board's "legal conclusions de novo, giving substantial weight to its interpretation of the statutes it administers" and its "findings of facts for substantial evidence." *Manke Lumber Co. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 113 Wn. App. 615, 622, 53 P.3d 1011 (2002), *review denied*, 148 Wn.2d 1017 (2003); *see also Swinomish Indian Tribal Cmty. v. W. Wash. Growth Mgmt. Hearings Bd.*, 161 Wn.2d 415, 424, 166 P.3d 1198 (2007); *Lewis County*, 157 Wn.2d at 498. Substantial evidence is " 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.' " *Soccer Fields*, 142 Wn.2d at 553 (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510, *review denied*, 132 Wn.2d 1004 (1997)).

JURISDICTION TO REVIEW CARLSBORG CAPITAL FACILITIES PLAN

¶19 The County maintains that the Growth Board did not have subject matter jurisdiction[16] to review the

---

[15] The County also cites RCW 34.05.570(3)(c) ("The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure.") and RCW 34.05.570(3)(i) ("The order is arbitrary or capricious.") as additional grounds for our review. But the County presents no substantive arguments addressing these alleged errors under the APA. Thus, we do not consider any possible errors on these grounds. RAP 10.3(a)(6); *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 689 n.4, 974 P.2d 836 (1999); *see also Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."), *review denied*, 136 Wn.2d 1015 (1998).

[16] We note that the jurisdictional challenge that the Growth Board considered in its final decision is different from the one raised on appeal. The Growth Board considered the County's challenge to the Growth Board's jurisdiction in its motion to dismiss Futurewise's challenge to the size of all the UGAs and the County's failure to revise its UGAs (i.e., a jurisdictional question related to the Growth Board's consideration of issue seven below). The County lost this jurisdictional challenge. But the County prevailed on the issue's merits when the Growth Board affirmed the County's previous UGA designations because Futurewise did not overcome the presumption of validity. *See* RCW 36.70A.320(1). No party appealed the Growth Board's rulings on the jurisdictional question posed in issue seven, or the ruling on the merits, to the superior court and that jurisdictional question is not part of this appeal. The new jurisdictional challenge raised on appeal focuses on the Growth Board's authority to review the Carlsborg UGA's capital facilities

Carlsborg capital facilities plan because the County adopted the capital facilities plan in 2000 and made no amendments to it after its 2007 GMA review.[17] In addition, the County argues that the legislature did not amend any controlling sections of the GMA that required the County to update the capital facilities plan, which it appears to concede would have conferred jurisdiction on the Growth Board per our Supreme Court's decision in *Thurston County*. 164 Wn.2d at 343-46. Futurewise argues that the legislature did amend a controlling section of the GMA, which allows it to challenge the failure to revise the Carlsborg UGA's capital facilities plan. In the alternative, Futurewise argues that OFM population changes that allow for challenges to unamended UGAs also allow for challenges to unamended capital facilities plans. We remand to the Growth Board so that it may make a factual determination necessary to resolve the first jurisdictional issue and reject Futurewise's alternative grounds for the Growth Board's jurisdiction.

¶20 We review a question of subject matter jurisdiction de novo. *Shaw Family, LLC v. Advocates for Responsible Dev.*, 157 Wn. App. 364, 372, 236 P.3d 975 (2010), *review denied*, 171 Wn.2d 1008 (2011). Generally, a party may challenge a Plan, development regulation, or amendment only within 60 days after publication of the adoption notice. RCW 36.70A.290(2). But in *Thurston County*, our Supreme Court held that there are limited permissible "failure to revise" Plan and UGA challenges that a party can bring after a county has undertaken its required GMA reviews. 164 Wn.2d at 343-54. The parties' arguments rely heavily on our Supreme Court's holdings in *Thurston*

plan and the available public services (i.e., a jurisdictional question related to the Growth Board's consideration of issue six below). Although the County failed to raise this jurisdictional question to the Growth Board, subject matter jurisdiction challenges can be raised at any time. RAP 2.5(a)(1); *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 556, 958 P.2d 962 (1998).

[17] The Carlsborg UGA's zoning and development standards are codified at chapter 33.20 CCC.

*County* necessitating a thorough review of that decision and its applicability to this case.[18]

A. OVERVIEW OF *THURSTON COUNTY*

¶21 In *Thurston County*, our Supreme Court addressed whether a county's amendment to a Plan or a UGA subjects the entire Plan or all the UGA designations, including unamended portions, to challenges and review by the Growth Board. 164 Wn.2d at 342. Though the full extent of Thurston County's revisions is not entirely clear, it is clear that after Thurston County completed its required reviews, it did not modify any rural density designations. *Thurston County*, 164 Wn.2d at 338. Thurston County expanded the Tenino UGA and established the Bucoda UGA, but it made no changes to Thurston County's other UGAs. *Thurston County*, 164 Wn.2d at 338-39.

¶22 Although Thurston County had not revised its rural density designations in the revised Plan, Futurewise sought review of some of the County's rural density designations. *Thurston County*, 164 Wn.2d at 338, 343. In this context, our Supreme Court held that

> a party may challenge a county's failure to revise a comprehensive plan only with respect to those provisions that are directly affected by new or recently amended GMA provisions, meaning those provisions related to mandatory elements of a comprehensive plan that have been adopted or substantively amended since the previous comprehensive plan was adopted or updated.

*Thurston County*, 164 Wn.2d at 344. The court reasoned that its holding ensured that counties complied with relevant recent GMA amendments while preserving some level of finality for the previously deemed compliant portions of comprehensive plans. *Thurston County*, 164 Wn.2d at 344-45. Our Supreme Court went on to evaluate a relevant GMA amendment made since the County's most

---

[18] We note that our Supreme Court released *Thurston County* after the Growth Board's final decision in this case but before the superior court's final order.

recent plan review and determined that the amendment substantially affected the rural land element portion of Plans. *Thurston County*, 164 Wn.2d at 346. Accordingly, Futurewise could "challenge whether the County's 2004 update complies with the new provisions and, if it does not, whether the remaining compliant land designations provide for a variety of rural densities." *Thurston County*, 164 Wn.2d at 346.

¶23 In a separate part of the *Thurston County* opinion, our Supreme Court held that a party could also challenge a failure to revise *UGA designations* under limited circumstances. The parties disputed whether Futurewise could challenge only the newly created Bucoda UGA and the amended Tenino UGA or whether it could challenge the overall size of land within UGAs throughout the county because of OFM population projection changes. *Thurston County*, 164 Wn.2d at 347. Our Supreme Court quickly dispensed with this issue, stating only that

> [t]he County fails to recognize the changes to the two individual UGAs modified the overall UGA size and, even if the overall UGA size was not changed, the population projection was updated. In this case, the County's UGA boundaries were amended in 2004 and, consequently, are subject to challenge.

*Thurston County*, 164 Wn.2d at 347. Applying the *Thurston County* analysis, we now address the jurisdictional question in this case.

### B. JURISDICTION BASED ON RELEVANT GMA AMENDMENTS

 ¶24 The parties agree that Futurewise can bring a challenge to a county's failure to revise a Plan with respect to those plan elements for which there are recent GMA statutory amendments. The parties disagree on whether the legislature amended the GMA recently in a way that directly affects the capital facilities plan element of a county's Plan. *Thurston County*, 164 Wn.2d at 344. The County argues, for the first time on appeal, that a lack of state funding negates the effectiveness of language added

in 2002 to the capital facilities plan element subsection of the GMA statute that details plan requirements. Although the legislature passed a bill amending the relevant statute in this case, LAWS OF 2002, ch. 154, § 2, under the statute's plain language, the statutory change is not enforceable in the absence of state funding because of a "null and void" funding clause. We remand to the Growth Board to determine whether the 2002 bill affecting the capital facilities plan has ever been funded sufficiently to render the provision enforceable.

¶25 We review statutory construction de novo. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 175, 4 P.3d 123 (2000). When the plain language is unambiguous, we construe the provision as written. *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 752, 888 P.2d 147 (1995). We evaluate the plain meaning of a statutory provision from the ordinary meaning of the language in the statute, as well as from the context of the statute in which that provision is found, and the statutory scheme as a whole. *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003). We do not liberally construe statutory language in the GMA. *Thurston County*, 164 Wn.2d at 342.

¶26 The statute detailing the mandatory elements of a Plan is codified at former RCW 36.70A.070. A capital facilities plan is a mandatory element of a county's Plan and must (1) inventory existing capital facilities; (2) identify future needs, possible locations, and specific funding sources for capital facilities; and (3) provide for reassessing the capital facilities plan if funding falls short. Former RCW 36.70A.070(3). Although the legislature amended parts of the Plan requirements in former RCW 36.70A.070 many times since the County's 2000 adoption of the Carlsborg capital facilities plan, only once did the legislature change the language in subsection three concerning the capital facilities plan element. LAWS OF 2002, ch. 154, § 2. The 2002 legislature added a sentence at the end of the capital facilities plan element subsection, stating, "Park and recreation facilities shall be included in the capital facilities plan element." LAWS OF 2002, ch. 154, § 2.

¶27 The County argues that this 2002 change to former RCW 36.70A.070(3) cannot serve as the basis for a failure-to-review challenge under *Thurston County* because the change never became effective and enforceable due to a lack of state funding. The County directs us to former RCW 36.70A.070(9), a subsection of the statute that the legislature added in the same bill when it added the aforementioned parks and recreational language to subsection three of the statute. Laws of 2002, ch. 154, § 2. Former RCW 36.70A.070(9) provides that any changes to the Plan element requirements made after January 1, 2002, including new elements or amendments to existing elements, are "null and void until funds sufficient to cover applicable local government costs are appropriated and distributed by the state." Laws of 2002, ch. 154, § 2.

¶28 The language of former RCW 36.70A.070(9) is unambiguous. Absent state funding, the counties are not required to implement any changes to the GMA's comprehensive plan requirements. Because the parks and recreation language in former RCW 36.70A.070(3) went into effect after January 1, 2002,[19] whether the parks and recreation language addition to a Plan's capital facilities plan element became an enforceable requirement for the County to consider and implement turns on whether the state has ever provided sufficient funding. Laws of 2002, ch. 154, § 2. If the state did not provide sufficient funds, then the legislature did not, for all practical purposes, actually amend former RCW 36.70A.070(3) yet.

¶29 Nothing in the record, except for a self-interested statement in Resolution No. 77, supports or refutes the County's assertion that the state never appropriated funding to make the 2002 changes to former RCW 36.70A.070(3) effective. And Futurewise has not disputed the County's lack of funding claim. Because we, an appellate court, are not fact finders, we must remand to the Growth Board for a determination on the sufficiency of state funding of the

---

[19] Laws of 2002, ch. 154 went into effect on June 13, 2002.

2002 statutory changes. *See Berger Eng'g Co. v. Hopkins*, 54 Wn.2d 300, 308, 340 P.2d 777 (1959) (an appellate court "is not a fact-finding branch of the judicial system of this state").

¶30 If the Growth Board determines that sufficient funding existed, then the record should be perfected and this issue certified for our complete and thorough review. But if the Growth Board determines that state funding never came to fruition, based on the plain language of former RCW 36.70A.070(9), the County is correct that the statutory changes are not enforceable. Accordingly, the amendment would have no force of law and there would have been no amendments to the capital facilities plan element subsection of the statute governing Plans since the County's 2000 adoption of the Carlsborg UGA's capital facilities plan. And, absent such sufficient state funding, the Growth Board lacked jurisdiction to review Futurewise's claim that the County failed to revise the capital facilities plan element of the County's Plan under the "relevant GMA amendment" standard articulated in *Thurston County*.

C. JURISDICTION BASED ON OFM POPULATION PROJECTION CHANGES

¶31 As alternative grounds for the Growth Board's jurisdiction to consider its capital facilities plan challenge, Futurewise argues that OFM's changed population projections allow it to challenge an unamended capital facilities plan as part of a UGA designation challenge in accordance with the second part of *Thurston County*'s jurisdictional analysis. We reject Futurewise's attempt to establish that a party can challenge an unamended capital facilities plan other than when relevant portions of the GMA have been amended.

¶32 Summarizing Futurewise's argument, the major premises are that (1) OFM projected population changes permit a challenge to a county's failure to review and revise its UGA designations; (2) UGA designations require consid-

eration of available capital public facilities because when making UGA designation decisions, a County must consider (a) whether land is characterized by urban growth,[20] (b) the needs for the County's projected population, and (c) an evaluation of surrounding public and private facilities and services;[21] (3) the only way to evaluate whether a UGA designation includes adequate public facilities and services is to review the relevant capital facilities plan; and (4) therefore challenge to an unamended UGA designation alleging failure to review and revise inherently includes a right to challenge the UGA's related capital facilities plan. Futurewise's argument fails for several reasons.

¶33 The second part of the *Thurston County* decision states that a *UGA designation* can be challenged when a County fails to revise UGAs in accordance with changed OFM population projections. 164 Wn.2d at 347. Futurewise's challenge of the adequacy of a *capital facilities plan* is not a challenge to a *UGA designation*.[22] A challenge to a capital facilities plan differs from a challenge to a UGA designation despite capital facilities plans and UGA designations having some similar considerations and overlapping functions. Capital facilities plans and UGAs are separate, statutorily defined elements of a Plan and the two elements contain different requirements and considerations. *Compare* former RCW 36.70A.070(3), *with* former RCW 36.70A.110.

¶34 It is a well-established tenet of statutory construction that "[s]tatutes must be interpreted and construed so

---

[20] The GMA defines "urban growth" as "typically requir[ing] urban governmental services." RCW 36.70A.030(19). "Urban governmental services" include a variety of "public services and public facilities." RCW 36.70A.030(18) (listing examples of "urban governmental services" including storm and sanitary sewers, water, street cleaning, fire and police protection, public transit, and other public utilities).

[21] Futurewise cites former RCW 36.70A.110(3) for these considerations.

[22] Indeed, in its appeal to the Growth Board, Futurewise recognized that capital facilities plan and UGA challenges are different when it assigned error separately to the adequacy of the Carlsborg capital facilities plan and the County's overall UGA designations.

that all the language used is given effect, with no portion rendered meaningless or superfluous." *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). In addition, "[w]hen the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings." *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219, 173 P.3d 885 (2007). Thus, to agree with Futurewise's argument, we would have to render meaningless the distinction between capital facilities plans and UGAs evidenced by their codifications in separate GMA statutes. We will not do this.

¶35 Moreover, our Supreme Court's decision in *Thurston County*, regarding the failure-to-revise challenge to a UGA designation based on changed population numbers, merely expressed a separate statutorily-rooted ability for a party to bring a failure-to-revise challenge that is *unique* to the UGA designation element of a Plan. According to the *Thurston County* decision, RCW 36.70A.130(3) mandates plan revisions after OFM population projection changes specifically with regard to UGA designations. 164 Wn.2d at 347. And RCW 36.70A.130(3) does not address capital facilities plans or other mandatory plan elements.[23] Accordingly, this specific statutorily provided and judicially recognized right to challenge a county's failure to revise a *UGA designation* after population projection changes does not

---

[23] RCW 36.70A.130(3) provides in its entirety,

(a) Each county that designates urban growth areas under RCW 36.70A.110 shall review, at least every ten years, its designated urban growth area or areas, and the densities permitted within both the incorporated and unincorporated portions of each urban growth area. In conjunction with this review by the county, each city located within an urban growth area shall review the densities permitted within its boundaries, and the extent to which the urban growth occurring within the county has located within each city and the unincorporated portions of the urban growth areas.

(b) The county comprehensive plan designating urban growth areas, and the densities permitted in the urban growth areas by the comprehensive plans of the county and each city located within the urban growth areas, shall be revised to accommodate the urban growth projected to occur in the county for the succeeding twenty-year period. The review required by this subsection may be combined with the review and evaluation required by RCW 36.70A.215.

apply, and cannot support a challenge, to the *other* mandatory plan elements listed in former RCW 36.70A.070.

¶36 Futurewise contends that this analysis improperly divorces UGA boundary designations and capital facilities plans in a way that allows capital facilities plans to evade GMA compliance review. But Futurewise fails to recognize that when the County originally created the capital facilities plan, someone could have challenged its compliance and in this instance either no one challenged it in a timely manner or it was deemed compliant and has vested. Simply because a party desires review of an issue after an appeal period has passed does not mean that a reviewing body has jurisdiction to entertain the challenge.

¶37 A significant purpose of the GMA is to establish coordinated growth *planning*; but at some point, continuous legal challenges inhibit creating and implementing the required Plan. Our Supreme Court has recognized a public interest in the finality of GMA comprehensive plan elements that were previously deemed compliant and that GMA amendments do not affect. *Thurston County*, 164 Wn.2d at 344-45. We interpret our Supreme Court's recognition of the ability to bring failure-to-revise UGA designations challenge after OFM population projections change as a narrow exception to this finality interest. This exception applies only to the UGA designation element of Plans and our Supreme Court did not invite failure-to-revise challenges after OFM population projection changes to capital facilities plans or other mandatory plan elements.

¶38 Moreover, contrary to Futurewise's assertions, capital facilities plans will not necessarily evade review. According to our Supreme Court's first holding in *Thurston County*, a party can bring a timely failure to revise a capital facilities plan challenge after a relevant GMA amendment. Although, in *Thurston County*, our Supreme Court specifically addressed a failure to review and revise a Plan's "rural" element (former RCW 36.70A.070(5); *Thurston County*, 164 Wn.2d at 346), this holding applies to all the mandatory plan elements listed in former RCW 36.70A.070. *Thurston*

*County*, 164 Wn.2d at 344 (stating its holding applies to all "mandatory elements of a comprehensive plan"). *Thurston County*'s first holding applies to each of the elements that the legislature requires counties to include in their Plans, including the capital facilities plan element.[24]

¶39 The County responds to this part of Futurewise's argument by suggesting that in *Gold Star Resorts, Inc. v. Futurewise*, 167 Wn.2d 723, 222 P.3d 791 (2009), our Supreme Court chose not to expand the "reach-back review" rules established in *Thurston County*.[25] The County's reliance on *Gold Star Resorts* is misplaced. In *Gold Star Resorts*, our Supreme Court applied the GMA amendment's failure-to-review challenge rule, established in the first part of *Thurston County*, to permit a challenge to parts of a Plan directly affected by recent GMA amendments. *Gold Star Resorts*, 167 Wn.2d at 733-34. Contrary to the County's argument, our Supreme Court was not presented with an "opportunity to expand the 'reach-back' rule," which it then declined. Br. of Resp't at 19. Instead, our Supreme Court was presented with an almost identical legal question to the one raised in *Thurston County* and resolved it by applying the same analysis. Accordingly, *Gold Star Resorts* offers no additional insight on the present jurisdictional question.

R2 AND RW2 HOUSING DENSITY ZONING DESIGNATIONS

¶40 Next, with respect to the R2 and RW2 housing density zoning designations, the County argues that (1) the Growth Board failed to defer to the County's planning actions because it failed to identify a "clear error" that the County made and (2) substantial evidence does not

---

[24] We note that although UGA designations are not included in the mandatory plan elements statute, UGAs are mandatory elements of a Plan under former RCW 36.70A.110(6) ("Each county shall include designations of urban growth areas in its comprehensive plan.").

[25] The term "reach-back review" is not a term familiar to us, nor has this term appeared in any previous Washington court case. Here, the County's use of "reach-back review" appears to be synonymous with our understanding of a party's ability to bring "failure-to-review" challenges.

support the Growth Board's findings. Specifically, the County argues that the Growth Board's requirement—that housing densities for rural lands must not exceed one dwelling unit per five acres—imposes a bright-line rule our Supreme Court previously rebuked. Futurewise responds that the R2 and RW2 housing density zoning designations, which permit densities of one dwelling unit per 2.4 acres, allow urban growth on rural lands in violation of the GMA. Futurewise also argues that these two zoning designations conflict with the County's own definition of "rural character" and that substantial evidence supports the Growth Board's findings. We refrain from issuing an advisory opinion addressing these issues.

¶41 Here, the legal questions related to the R2 and RW2 housing density zoning designations are academic since, on November 5, 2009, the Growth Board rescinded its findings of invalidity related to the use of these zoning designations after the County ceased using them in rural areas. Compliance Order (LAMIRDs and Rural Lands), *Dry Creek Coal.*, *supra*, No. 07-2-0018c, at 11-12. Thus, the original portion of the Growth Board's decision that the County appealed no longer exists and there is no agency action for us to review. The County presents arguments that the Growth Board committed an error of law and that substantial evidence does not support the Growth Board's original decision. But without an agency action, there is no error, legal question, or controversy for a reviewing court to consider.

¶42 In addition, the County conceded that "since this case has gone before the courts, [the] County chose to *rescind RW2/R2 zoning* of less than one dwelling unit per 2.4 acres outside of LAMIRDs" and adopted innovative zoning techniques in their place. Br. of Resp't at 5 (emphasis added). At oral argument before this court, the County asserted that R2 and RW2 housing density zoning designations are still codified in the County's municipal code, being used within LAMIRDs, and that the County *might* use these densities in rural areas based on the outcome of this appeal. That the R2 and RW2 housing density zoning

designations are still codified and properly used in LAMIRDs is irrelevant to the issue on appeal here. The R2 and RW2 issue preserved on appeal was the Growth Board's invalidity finding of the improper *use* of the R2 and RW2 housing density zoning designations *in rural areas* (i.e., outside of UGAs and LAMIRDs). Thus, there is no current improper use of these zoning designations as evidenced by the Growth Board's rescinding of its invalidity finding. Moreover, when the County has already established alternative innovative zoning techniques that achieve goals similar to those sought by using the R2 and RW2 housing density zoning designations, it is unclear why the County would ever need to apply the R2 and RW2 housing density zoning designations in rural areas.

¶43 Regardless, the County asks us to enter an advisory opinion addressing GMA compliance of the R2 and RW2 housing density zoning designations because they "remain[ ] a potential rural zoning pending the outcome of these appeals." Br. of Resp't at 6. But we do not issue advisory opinions on speculative facts and decline the County's invitation to do so here. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 416, 27 P.3d 1149 (2001), *cert. denied*, 535 U.S. 931 (2002); *Commonwealth Ins. Co. of Am. v. Grays Harbor County*, 120 Wn. App. 232, 245, 84 P.3d 304 (2004) (citing *Wash. Beauty Coll., Inc. v. Huse*, 195 Wash. 160, 164, 80 P.2d 403 (1938)).

¶44 We note a frustrating problem and trend in GMA cases exemplified by the circumstances of the appealed R2 and RW2 issue and the ruling that we must issue. While an appeal is pending, counties frequently change the underlying facts and circumstances of GMA cases by enacting new ordinances and resolutions so that they become compliant with the Growth Board's decisions while simultaneously invoking the jurisdiction of this court to challenge the Growth Board's decision. Similarly, the Growth Board frequently changes the underlying facts and circumstances of GMA cases pending before us by entering orders in response to a county's actions that vacate the noncompliance

and invalidity findings that are being reviewed. Such actions, as in this case, prevent this court from addressing the merits of the Growth Board decision originally appealed. *See Clark County v. W. Wash. Growth Mgmt. Hearing Bd.*, 161 Wn. App. 204, 254 P.3d 862 (2011) (refusing to issue an advisory opinion on an appealed issue when a county's subsequent legislative actions mooted the issue on appeal and discussing GMA procedural requirements that promote changes to the underlying facts while an appeal is pending).

¶45 Although the GMA mandates compliance hearings after a Growth Board's final decision, the GMA also permits the Growth Board to extend the time for the compliance hearings. *See* RCW 36.70A.300(3)(b) (After a finding of noncompliance, "[t]he [Growth B]oard shall specify a reasonable time not in excess of one hundred eighty days, *or such longer period as determined by the [Growth B]oard in cases of unusual scope or complexity*, within which the state agency, county, or city shall comply with the requirements of this chapter." (emphasis added)). Based on RCW 36.70A-.300(3)(b), counties could preserve the record *and issues* for review by requesting that the Growth Board stay compliance hearings pending a final decision on appeal.[26] Importantly, counties and cities would also be prohibited from continuing with their development plans in reliance on the challenged Plan because the issues would be pending on appeal. *See Clark County*, 161 Wn. App. at 225-26 (holding that city government cannot rely on county GMA planning decisions while they are under review by the Growth Board or an appellate court).

¶46 For the reasons stated above, we remand to the Growth Board for its further consideration in accordance with this opinion.

HUNT and VAN DEREN, JJ., concur.

Reconsideration denied May 13, 2011.

---

[26] Because a determination of invalidity requires the Growth Board to make noncompliance findings, RCW 36.70A.300(3)(b) would also permit the Growth Board to enter a stay if a county challenges only invalidity determinations on appeal. Former RCW 36.70A.302(1)(a).